### YALE RUBIN *v.* SHIRLEY A. RUBIN
### (4066)

DUPONT, C. J., HULL and DALY, Js.

Argued April 29—decision released June 17, 1986

*Francis M. Bosze,* for the appellant (plaintiff).
*Pasquale Young,* for the appellee (defendant).

HULL, J. This case raises the question whether, in a dissolution action, the awarding to one spouse of a share of the assets which the other spouse may acquire in the future under his mother's will and on termination of an inter vivos trust, runs afoul of the rule of *Krause* v. *Krause,* 174 Conn. 361, 387 A.2d 548 (1978). That case held that testimony concerning the potential inheritance of a spouse is speculative and therefore inadmissible. We hold that no per se rule governs admission of such testimony but rather each case rests upon its own factual foundation, and that in this case where fundamental fairness mandated such an order, and where the order was entirely contingent on future events, the *Krause* rule was not violated by admission of the challenged testimony.

To set the stage for analysis of this issue, a detailed summary of the court's factual findings, reasoning, and orders entered is necessary. The parties married in 1950.[1] In 1983, the plaintiff husband sought a dissolution on the grounds of irretrievable breakdown. The defendant wife filed a cross-complaint seeking affirmative relief. At the time of the court's decision on February 9, 1985, the plaintiff was sixty-two years old. After receiving a degree in business administration, the plaintiff was employed in his father's scrap metal business which was conducted on an Ansonia site owned by his mother. When his father died, the plaintiff carried on the business until the real estate was taken in eminent domain proceedings. He thereafter conducted the business in Bridgeport for several years until it was terminated due to financial losses. The plaintiff, whose health had been impaired by former excess use of alcohol, was unemployed for several years prior to the dissolution judgment. Although eligible for social security benefits, the plaintiff had not applied because he thought that he was still employable.

---

[1] There are no minor children of the marriage.

The plaintiff's financial affidavit showed virtually no wages, as his business was defunct. He claimed $16,000 a year income, however, consisting of $6000 per year from a trust fund and a $10,000 annual gift from his mother.[2] He showed weekly expenses of $513.22, including $105.76 a week to his wife. He claimed to have assets of $95,050 including the family dwelling at $60,000, a car at $2900, personal property at $25,500, and a life insurance policy with a $6650 face value. The plaintiff claimed liabilities of $17,280 consisting, in part, of a debt of $10,000 to his mother. The court found that the plaintiff was the residuary beneficiary of an inter vivos trust created by his mother. This trust provided that on the death of the plaintiff's mother, he would receive all of the remaining trust estate then amounting to over $200,000. While the net proceeds of the trust were then payable solely to the plaintiff's mother, she had been giving him $10,000 a year in ten installments of $1000 each. The plaintiff was also a beneficiary under a trust created by a sister's husband which terminates in 1988 unless extended by the settlor. Additionally, the plaintiff is one of two equal residuary legatees under his mother's will.[3] Finally, the court found that the principal cause of the breakdown of the marriage in 1978 was the plaintiff's excessive use of alcohol.

The defendant wife, who was fifty-six years old at the time of the decree, was under medical care for a chronic ailment. While the defendant's illness was under control at the time of the dissolution, she tired easily and occasionally had memory lapses. She has a

---

[2] The referee, in his memorandum of decision, found that the plaintiff received $16,000 from this trust. The parties agree that the figure $16,000 is apparently a typographical error as the undisputed evidence showed the amount to be $6000.

[3] The plaintiff's sister, Shirley Sendar, testified that a trust she set up for the plaintiff yielded $6000 per year to him. There is no explanation in the record of the conflict between this description of the trust and the court's earlier recital of a trust set up by the plaintiff's sister's husband.

high school education but was unemployed at the time of the dissolution. While she could do some work in interior designing, the defendant's prospects for future earnings were not very bright. The defendant's financial affidavit showed $20 a week wages and $35 a week rent from one of her daughters who lives with her. Her total assets consisted of a $200 car. She owed $5343, most of which was bills incurred as a result of her illness.

The court ordered as follows: (1) that the family residence and almost all of its contents be awarded to the defendant; (2) that the plaintiff pay periodic alimony of $150 weekly to the defendant; (3) that the plaintiff name the defendant irrevocable beneficiary of his $10,000 life insurance policy; (4) that the plaintiff pay all current debts of both parties; (5) that the plaintiff pay the defendant $1000 for counsel fees. In its memorandum of decision, the court then gingerly stepped through the mine field created by our Supreme Court's decision in *Krause* v. *Krause,* supra, holding as follows: "It is apparent from the foregoing statement of the terms of the trust that the plaintiff has no presently vested interest in any of the assets of the trust corpus or of the income from that source, which would be susceptible to assignment by either the plaintiff himself or by this court. *Krause* v. *Krause,* supra; *Thompson* v. *Thompson,* 183 Conn. 96, [438 A.2d 839 (1981)]. However, the court may and will make an order which will be contingent upon the possibility of the future inheritance becoming an actuality." Accordingly, the court ordered that the plaintiff pay one-third of the net estate which he receives from either the trust created by his mother or of any testamentary gift he received from her in the form of inheritance.[4]

---

[4] Although not found by the court, there was testimony that the plaintiff's mother was eighty-nine years old and in fairly good health. There was also testimony that her assets were approximately $725,000 at the time of the dissolution.

The plaintiff appealed and filed eight claims of error which may be fairly summarized as follows: (1) that the court erred in ordering the payment of one-third of any future inheritance from his mother and a one-third share of the amount he may receive from the mother's inter vivos trust, and in allowing evidence concerning this matter; (2) that the court erred in awarding the above contingent amounts since together with all of the other court orders the total was an unreasonable and disproportionate award to the defendant; (3) that the court erred in awarding counsel fees to the defendant; and (4) that the court erred in awarding periodic alimony to the defendant given the parties' circumstances. We find no error.

The principal issue is the court's consideration of *Krause*-type testimony despite that case's apparent prohibition of such evidence. The issues in *Krause* v. *Krause*, supra, were whether the trial court erred in a dissolution action by failing to make an award or assignment of property to the defendant husband based upon his claim that the plaintiff had an opportunity for future acquisition of assets and income from her parents and by failing to admit into evidence the plaintiff's mother's testimony of her net worth. The dissolution judgment ordered the defendant to pay $50 a week child support, and did not award to either party alimony or a division of the other's property.

At trial, the defendant sought to admit testimony to show that, from 1968 to the time of the dissolution, the plaintiff had received income from investments and gifts from her parents. The plaintiff's mother was permitted to testify that she and her husband had provided for the plaintiff and for their granddaughter. The trial court ruled, however, that testimony as to the net worth of the plaintiff's mother was inadmissible.[5] The defend-

[5] An examination of the record on appeal in *Krause* shows that during the nine years of the marriage the plaintiff had received income of approx-

ant claimed the trial court erred in sustaining the plaintiff's objection to the admission of testimony of her mother's net worth. In addressing the defendant's claim that this action was erroneous, our Supreme Court said "[t]he court's ruling cannot be said to be an abuse of discretion since under the circumstances surrounding the vesting of a 'potential inheritance of the wife,' as the defendant describes it, the expectancy according to the testimony elicited and appearing in the finding and transcript is, at best, speculative. ' "Expectancy" is the bare hope of succession to the property of another, such as may be entertained by an heir apparent. Such a hope is inchoate. It has no attribute of property, and the interest to which it relates is at the time nonexistent and may never exist.' *Johnson* v. *Breeding,* 136 Tenn. 528, 529, 190 S.W. 545 [1916]. The moment of the decedent's death determines the right of inheritance or testamentary succession. *Emanuelson* v. *Sullivan,* 147 Conn. 406, 409, 161 A.2d 788 [1960]; 23 Am. Jur. 2d, Descent and Distribution, § 14." *Krause* v. *Krause,* supra, 365.

Superficially, and resting on its own language, *Krause* would appear to bar the evidence and orders involved in this case. A fundamental difference, however, between *Krause* and this case distinguishes its holding. In *Krause,* the defendant was seeking a *present* order based on a totally speculative and uncertain future happening, while, in the present case, the defendant spouse was awarded a *future* share contingent on the plaintiff's receipt of certain benefits.

Our conclusion is supported by our Supreme Court's decision in *Thompson* v. *Thompson,* 183 Conn. 96, 438

---

imately $400,000 from investments and gifts from her parents. She also had substantial capital assets from the same source. The defendant had limited capital assets and had been unemployed for many years until just prior to the dissolution proceedings. He claimed in the trial court that $50,000 should be awarded him "for alimony and as a property settlement."

A.2d 839 (1981), wherein the court somewhat undermined the hard and fast exclusionary rule set forth in *Krause*. In *Thompson,* the plaintiff wife appealed from a dissolution judgment transferring to her the defendant's one-half equity in the parties' house and ordering her to pay the defendant $19,000 for that interest. She claimed that the trial court erred in considering evidence on the extent of her potential inheritance from her mother. In responding to that claim, our Supreme Court stated as follows: "With respect to the potential inheritance, additional background material is necessary to put the plaintiff's claim in proper perspective. The defendant introduced evidence showing that the plaintiff was listed, along with her elderly mother, as a joint owner with survivorship rights in a savings account in the amount of $9886.93. In addition, the plaintiff and her mother were joint owners of several savings certificates in the aggregate amount of $21,786.65 and stock certificates valued at $24,638. This evidence tended to show that the plaintiff held a present property interest in the savings accounts. See General Statutes § 36-3. Seeking to rebut the defendant's proof, the plaintiff introduced evidence which demonstrated that these jointly held assets were initially acquired with the mother's funds and that the plaintiff considered these funds to be owned entirely by her mother. Further evidence offered by the plaintiff indicated that she was to receive one quarter of her mother's estate upon her death." Id., 98. The total value of the estate was $66,124.62.

The Supreme Court recognized the *Krause* rule but held that *Krause* did not help the plaintiff because it was she who introduced evidence of her potential inheritance. The Supreme Court also determined that any error committed by the court with respect to the potential inheritance operated in favor of the plaintiff since when faced with the bare fact of the joint owner-

ship in the savings accounts, the court could well have treated the accounts as the plaintiff's assets. By considering the evidence that only one quarter of these assets were destined for the plaintiff, therefore, the court diminished the size of her estate to her advantage. This case, although somewhat circular in reasoning, made it clear that, post-*Krause*, the rule of exclusion of evidence of potential inheritance states more than it means under different circumstances.[6]

The first reason for distinguishing *Krause* advanced by the *Thompson* court, that the evidence was introduced by the appellant, does not apply in this case. Additionally, it is difficult to argue that consideration of this evidence was favorable to the plaintiff since the court's orders, although reasonable in view of the defendant's extreme poverty after thirty-five years of marriage, were not more advantageous than they would have been had the court not considered the plaintiff's contingent future assets.

The absolute prohibition of *Krause,* however, has been further weakened by our Supreme Court's decision in *Anderson* v. *Anderson,* 191 Conn. 46, 463 A.2d 578 (1983), where it further confined *Krause* to its own factual situation. In *Anderson,* the plaintiff husband had business problems, while the defendant wife had been at the time of the marriage a nationally celebrated harpist.[7] The trial court ordered no alimony and made certain orders concerning the division of the parties' property. In appealing from the dissolution judgment, the defendant assigned as error the court's division of the

---

[6] In doing what it did in *Thompson* v. *Thompson,* 183 Conn. 96, 99, 438 A.2d 839 (1981), our Supreme Court said it did not intend to retreat from *Krause* v. *Krause,* 174 Conn. 361, 387 A.2d 548 (1978). While *Thompson* may not be a retreat, it was at least a strategic withdrawal.

[7] Justice Shea in his dissent in *Anderson* v. *Anderson,* 191 Conn. 46, 61, 463 A.2d 578 (1983), found the term "nationally celebrated harpist" inappropriate.

assets claiming it was based in part on a finding that she had the possibility of the future acquisition of capital assets.

Our Supreme Court rejected this claim as follows: "At the outset, we examine literally the language attacked. If anything, it is largely both cautious and tentative as it says 'apparently' from family contributions there is the 'possibility' of future acquisition of capital assets. It is true that the defendant and her brother testified that monies involved were loans; yet the court did also use the term 'contributions by her family'. . . . It is true that the defendant and her brother testified that the monies involved were loans, but there was also evidence from the defendant herself that she had never signed a note for these monies and that her family continued sending her money even after the plaintiff left the family home. In addition, her brother testified that he and his mother were paying the rent on the business premises at the time of trial. There was also evidence that the defendant's mother, who was eighty-nine years old at the time of trial, had sent about $40,000 for which no note has been signed. The reasonable thrust of such evidence amply supports the trial court's view that 'apparently from contributions by her family there is the possibility of the future acquisition of capital assets.' Even though the court could not believe the opposite, i.e., that these monies were not loans, there was adequate evidence to justify this tentative and cautious conclusion of the 'possibility' referred to. *The court certainly did not find that there was an expectancy of an inheritance.* See *Krause* v. *Krause,* 174 Conn. 361, 365, 387 A.2d 548 (1978). It did, however, have evidence of large sums of money coming to the defendant from her family, including her mother who did not appear and testify. We have demonstrated that this determination, contrary to the

defendant's claim, was supported by evidence." (Emphasis added; footnote omitted.) *Anderson* v. *Anderson,* supra, 55–57.

Despite the *Anderson* court's reliance on the tentative and cautious conclusion of a possibility of future inheritance, we read *Anderson* as in effect vitiating the rule of *Krause* without specifically overruling it. It is clear that, under *Krause,* the trial court still cannot admit evidence of a potential inheritance to reach a conclusion of an expectancy of inheritance which would enter into its consideration of the present division of the parties' assets. *Krause* still stands, although somewhat tattered and torn, for this proposition. Under *Anderson,* however, the court may factor into its assignment of property conclusions concerning "possibilities" of future inheritance, and may admit evidence for such a purpose.

Under *Krause* and *Anderson,* read together, the court's conclusion in this case passes muster. There was no present order based on a potential inheritance as was sought in *Krause.* The court did not find, nor did its order require a finding, of an expectancy of an inheritance. The court's order was entirely contingent on future occurrences. If the plaintiff does not acquire such future assets, the order is inoperative. The consideration of possible future acquisition of assets, did not skew or taint the court's orders concerning assignment of property. The court could hardly do less for the defendant wife, if she were not to go on welfare, and, as outlined above, it could hardly do more. It was only equitable that, should the educated party at fault in the proceedings come into substantial assets in the future, the less educated party should be able to enjoy a somewhat more comfortable life than the spartan one assigned to her by the parties' financial circumstances at the time of the decree.

Our previous comments make unnecessary extended discussion of the plaintiff's claimed errors in the court's discretionary orders. "[W]e again point out that '[w]ith respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. *Gallo* v. *Gallo,* 184 Conn. 36, 50, 440 A.2d 782 (1981); *Fattibene* v. *Fattibene,* 183 Conn. 433, 442, 441 A.2d 3 (1981); *deCossy* v. *deCossy,* 172 Conn. 202, 204, 374 A.2d 182 (1977).' *Venuti* v. *Venuti,* 185 Conn. 156, 161, 440 A.2d 878 (1981). Moreover, 'the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage.' *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 585, 362 A.2d 835 (1975); see *Robinson* v. *Robinson,* 187 Conn. 70, 72, 444 A.2d 234 (1982)." *Anderson* v. *Anderson,* supra, 57.

Finally, in view of the defendant's total assets of $200, the court's award of $1000 in counsel fees was clearly within its discretion.

There is no error.

In this opinion the other judges concurred.