YALE RUBIN *v.* SHIRLEY A. RUBIN
(13002)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and SCHALLER, Js.

Argued March 10—decision released June 30, 1987

*Francis M. Bosze,* for the appellant (plaintiff).
*Pasquale Young,* for the appellee (defendant).

SHEA, J. The Appellate Court upheld the judgment of the trial court, in an action for dissolution of marriage, ordering the plaintiff husband to pay to the defendant wife a share of the assets he may acquire under his mother's will and on termination of a revocable inter vivos trust created by her. *Rubin* v. *Rubin,* 7 Conn. App. 735, 510 A.2d 1000 (1986). This court granted the plaintiff's petition for certification and now addresses the issue of the propriety in a marriage dissolution judgment of such a contingent assignment of property that one party expects to acquire. We reverse the judgment of the Appellate Court.

The facts relating to the issues on appeal are not disputed. The parties were married in 1950. Due to the excessive use of alcohol by the plaintiff, the marital relationship broke down and the parties separated in 1978. The plaintiff, in his complaint, and the defendant, in her cross complaint, each sought a dissolution of the marriage and an assignment of the other's estate pursuant to General Statutes § 46b-81.[1] Additionally, the

---

[1] "[General Statutes] Sec. 46b-81. (Formerly Sec. 46-51). ASSIGNMENT OF PROPERTY AND TRANSFER OF TITLE. (a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land

defendant sought alimony. At the time of the dissolution decree in 1985, the plaintiff was sixty-two years old and the defendant was fifty-six years old. There were no minor children of the marriage.

The plaintiff, who had received a degree in business administration before taking over his father's scrap metal business, averred in his financial affidavit that he had no income from wages because his "business is now defunct." He admitted, however, that he had been receiving an annual gift of $10,000 from his mother, and an additional $6000 per year from a trust fund set up by his sister's husband. By its terms, that trust will expire in 1988 unless its life is extended by the settlor.[2] The plaintiff listed total assets of $95,050, which consisted of a home in Hamden, a car, a life insurance policy, and various items of personal property. His total liabilities of $17,280 included a $10,000 debt to his mother, and his estimate of weekly expenses of $513.22 included a contribution to the defendant of $105.76.

The financial affidavit of the defendant, who had received a high school education, showed a total weekly

records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[2] The contingent assignment of property included in the dissolution judgment applies only to the "net estate which [the plaintiff] receives from either the trust created by his mother and from her by way of a testamentary gift or other form of inheritance." Thus, the order does not involve the trust established by the husband of the plaintiff's sister.

income of $55, total assets consisting of a car valued at $200, and total liabilities of $5343, which principally represented the cost of medical care for a chronic ailment. The defendant's weekly living expenses amounted to $252. Although the defendant has some work experience in the field of interior design, her prospects for future earnings are dim.

The plaintiff is the residuary beneficiary of a revocable inter vivos trust created by his mother, which is funded with approximately $225,000 in securities. At oral argument the plaintiff acknowledged that, for a while, money from his mother's trust fund had supported the marriage of the parties. Additionally, the plaintiff is one of two equal residuary legatees under the will executed by his mother, whose assets at the time of the dissolution were approximately $725,000. See generally *Rubin* v. *Rubin,* supra, 736–38.

In its decree dissolving the marriage, the trial court ordered (1) that the plaintiff pay the defendant as periodic alimony the weekly sum of $150, (2) that the plaintiff name the defendant as the irrevocable beneficiary of his $10,000 life insurance policy, (3) that the family residence, valued at $60,000 in the plaintiff's affidavit, and almost all of its contents be awarded to the defendant, (4) that the plaintiff pay all current debts of both parties, and (5) that the plaintiff pay to the defendant's counsel the sum of $1000 in attorney's fees. Id., 738. In addition the trial court ordered that the plaintiff pay to the defendant one third of the net estate that he may receive "from either the trust created by his mother and from her by way of a testamentary gift or other form of inheritance." On appeal the plaintiff challenges this contingent order and also claims that the court erred in allowing into evidence the trust agreement and his mother's deposition, which concerned her will and assets, and seeks a new trial at which such evidence would be excluded. We conclude

that the contingent order cannot be sustained either as an assignment of property under General Statutes § 46b-81 or as an award of alimony under General Statutes § 46b-82. We also hold that the evidence concerning the plaintiff's expectancy was inadmissible in respect to the other issues in the case and, therefore, that a new trial is necessary.

## I

Our analysis of this case requires an understanding of the distinction between alimony and a property division. "The purpose of alimony is to meet one's continuing duty to support; *Wood* v. *Wood,* 165 Conn. 777, 784, 345 A.2d 5 (1974); while the purpose of property division is to unscramble the ownership of property, giving to each spouse what is equitably his. *Beede* v. *Beede,* 186 Conn. 191, 195, 440 A.2d 283 (1982)." *Weiman* v. *Weiman,* 188 Conn. 232, 234, 449 A.2d 151 (1982). "The mode of the allowance or the name by which it is called does not determine its character, since the true test is the purpose for which it is made." *Maxwell* v. *Maxwell,* 11 Conn. Sup. 205, 207 (1942). Although alimony is usually payable periodically, whereas a property division usually is effectuated by a single transfer or payment, lump sum alimony awards as well as property divisions carried out by installment payments have often been decreed. "The form of the order therefore does not always reveal its true substance." H. Clark, Domestic Relations in the United States (1968) § 14.8, p. 450. "It is easy to see how, relying upon a vague statutory power, the courts have come to blur the distinction between alimony orders and divisions of property." Id., p. 451.

While a divorce court, as a court of equity, has been deemed to possess the inherent power to adjudicate the property rights of the parties before it; see *Singer* v. *Singer,* 165 Ala. 144, 148, 51 So. 755 (1910); *Cole* v.

*Cole,* 142 Ill. 19, 26, 31 N.E. 109 (1892); *Carnahan* v. *Carnahan,* 143 Mich. 390, 396–97, 107 N.W. 73 (1906); the power of a court to transfer property from one spouse to the other must rest upon an enabling statute. See *Connolly* v. *Connolly,* 191 Conn. 468, 476, 464 A.2d 837 (1983); *Valante* v. *Valante,* 180 Conn. 528, 532, 429 A.2d 964 (1980); see also *Riggers* v. *Riggers,* 81 Idaho 570, 573–74, 347 P.2d 762 (1959); *Emery* v. *Emery,* 122 Mont. 201, 224, 200 P.2d 251 (1948). Authority in Connecticut for such a transfer of property is found in General Statutes § 46b-81, which provides in part that "[a]t the time of entering a decree . . . dissolving a marriage . . . the superior court may assign to either the husband or wife all or any part of the estate of the other . . . . In fixing the nature and value of the property, if any, to be assigned, the court . . . shall consider the . . . needs of each of the parties and the opportunity of each for future acquisition of capital assets and income."

In *Krause* v. *Krause,* 174 Conn. 361, 387 A.2d 548 (1978), this court construed the predecessor of § 46b-81, despite the reference to "the opportunity . . . for future acquisition of capital assets," not to permit the consideration of evidence of a "potential inheritance." We upheld the ruling of the trial court sustaining an objection to the admission of testimony regarding the net worth of the plaintiff wife's mother, who had prepared a will naming the wife as a beneficiary. We stated: "The court's ruling cannot be said to be an abuse of discretion since under the circumstances surrounding the vesting of a 'potential inheritance of the wife,' as the defendant describes it, the expectancy according to the testimony elicited and appearing in the finding and transcript is, at best, speculative. ' "Expectancy" is the bare hope of succession to the property of another, such as may be entertained by an heir apparent. Such a hope is inchoate. It has no attribute of property, and

the interest to which it relates is at the time nonexistent and may never exist.' *Johnson* v. *Breeding,* 136 Tenn. 528, 529, 190 S.W. 545 [1916]." *Krause* v. *Krause,* supra, 365.

Distinguishing *Krause* from the present case, the Appellate Court stated: "Superficially, and resting on its own language, *Krause* would appear to bar the evidence and orders involved in this case. A fundamental difference, however, between *Krause* and this case distinguishes its holding. In *Krause,* the defendant was seeking a *present* order based on a totally speculative and uncertain *future* happening, while, in the present case, the defendant spouse was awarded a future share contingent on the plaintiff's receipt of certain benefits." (Emphasis in original.) *Rubin* v. *Rubin,* supra, 740. Because the Appellate Court viewed *Krause,* which dealt only with issues of property transfer,[3] as the precedent most apposite to the disposition of the present case, its decision may plausibly be read to regard the challenged order, that the plaintiff pay to the defendant one third of the net estate he may acquire from his mother's will or inter vivos trust, as similarly representing a property transfer.

We decline to adopt the position that the challenged order in the present case, involving a contingent award of *expected* property, can be upheld as a property transfer authorized by § 46b-81. As we have stated, § 46b-81 authorizes the court to assign to either spouse "all or any part of the estate of the other," and prescribes that, in fixing the value of such "property," the court shall consider, inter alia, "the opportunity of each for future acquisition of capital assets and income." The terms "estate" and "property," as used in the statute, connote presently existing interests. "Property" entails

---

[3] We note that in *Krause* the trial court's conclusion that neither party was entitled to alimony support payments was not challenged. See *Krause* v. *Krause,* 174 Conn. 361, 362, 387 A.2d 548 (1978).

"interests that a person has already acquired in specific benefits." *Board of Regents* v. *Roth,* 408 U.S. 564, 576, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); see also *Millard* v. *Connecticut Personnel Appeal Board,* 170 Conn. 541, 546, 368 A.2d 121 (1976).

Where the trial court had ordered the defendant husband, whose property had a net worth of $62,112.99 but who was expecting an inheritance valued at $198,045, to pay to the plaintiff wife, inter alia, the sum of $100,000 within four years of the decree of divorce, the Supreme Court of Wyoming reversed. *Storm* v. *Storm,* 470 P.2d 367 (Wyo. 1970). The *Storm* court stated: "Equitably speaking, it is reasonable to consider the inheritance under consideration the same as future property. With respect to future property, we think the rule must be that, when a court divides property incidental to the granting of a divorce, the court is limited by the amount of property in its hands for division and a mere expectancy is not subject to division." Id., 370; accord *Loeb* v. *Loeb,* 261 Ind. 193, 201–202, 301 N.E.2d 349 (1973); *Davidson* v. *Davidson,* 19 Mass. App. 364, 374–75, 474 N.E.2d 1137 (1985). We agree with the view that the relevance of probable future income "in determining the fair and equitable division of existing property . . . does not establish jurisdiction to make allowances from . . . property other than that held at the time." *Beres* v. *Beres,* 52 Del. 133, 137–38, 154 A.2d 384 (1959). Even where a dissolution judgment has become final, it has been held that the provision of the decree awarding the wife one half of any property the husband might receive by will or inheritance from his father, who died ten years after the dissolution, was "utterly void and ineffectual," because the husband's expectancy was not part of his estate from which such an allowance could be made. *Meeks* v. *Kirkland,* 228 Ga. 607, 608, 187 S.E.2d 296 (1972); see also *Trammell* v. *West,* 224 Ga. 365, 162 S.E.2d 353 (1968).

We are not persuaded that the contingent nature of the award of expected property in the present case brings that award within the ambit of § 46b-81. That the plaintiff must pay the defendant a one third share of the assets he may acquire under his mother's will and on termination of her inter vivos trust only if and when this acquisition materializes does not transmute such expected assets into "property" of the plaintiff. We note, moreover, that property distributions, unlike alimony awards, cannot be modified to alleviate hardships that may result from enforcement of the original dissolution decree in the face of changes in the situation of either party. See *Connolly* v. *Connolly,* supra, 477; H. Clark, supra, § 14.8, p. 449, and § 14.9, p. 453. The present order, while contingent, is definite; yet the date upon which it may take effect, as well as the situation of the parties upon that date, is necessarily uncertain. Until our legislature amends § 46b-81 to authorize contingent transfers of expected property, we shall not read such an intent into the statute.

## II

We have concluded that the award to the defendant of a share of the plaintiff's expectancy cannot be sustained as a permissible transfer of property under § 46b-81. We must nevertheless consider whether the challenged order can be supported upon some alternative ground. See *Pepe* v. *New Britain,* 203 Conn. 281, 292, 524 A.2d 629 (1987); *Henderson* v. *Department of Motor Vehicles,* 202 Conn. 453, 461, 521 A.2d 1040 (1987); *W. J. Megin, Inc.* v. *State,* 181 Conn. 47, 54, 434 A.2d 306 (1980). If the Appellate Court has erroneously upheld the award as an assignment under § 46b-81, we would properly affirm the judgment "if the same result is required by law." *A & H Corporation* v. *Bridgeport,* 180 Conn. 435, 443, 430 A.2d 25 (1980); *Morris* v. *Costa,* 174 Conn. 592, 597–98, 392 A.2d 468 (1978).

General Statutes § 46b-82,[4] which currently authorizes the court to order alimony, neither defines the term "alimony" nor restricts the scope of the award. In conferring discretion upon the court to determine "whether alimony shall be awarded, and the duration and amount of the award," § 46b-82 directs the court to consider "the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . . " We have often stated that the type and amount of alimony awarded under a decree dissolving a marriage is within the sound discretion of the trial court. *Tworek* v. *Tworek,* 170 Conn. 159, 160, 365 A.2d 392 (1976); *Krieble* v. *Krieble,* 168 Conn. 7, 7, 357 A.2d 475 (1975).

We are not aware of any principle of law that necessarily precludes a trial court, in exercising its discretion to fashion an alimony award, from ordering a payment that is contingent upon some future event. Such contingent awards often appear in judgments that

---

[4] "[General Statutes] Sec. 46b-82. (Formerly Sec. 46-52). ALIMONY. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

have incorporated agreements of the parties that provide for adjustment of the amount of support or alimony to be paid in relation to the earnings of the parties. For instance, in *Silver* v. *Silver,* 170 Conn. 305, 365 A.2d 1188 (1976), this court had occasion to construe such an alimony provision taken from the parties' separation agreement[5] that included the following: " 'In the event the defendant's salary shall during any future calendar year exceed his salary for the current calendar year by Three Thousand Dollars ($3000.00) or more, then the defendant agrees [sic] to pay to the plaintiff, as additional alimony, 15% of such increase over his salary for the current year, such additional alimony to be paid on or before January 31 of the year following the year in which such increase shall have occurred.' " Id., 306; see also *Lescher* v. *Lescher,* 679 S.W.2d 463, 465–66 (Tenn. App. 1984). We do not regard the consent of the parties to be essential to the validity of a contingent alimony award, although it may be relevant to the wisdom of such an order.

It must be remembered, however, that an alimony order is predicated upon the obligation of support that spouses assume toward each other by virtue of the marriage. A judgment contingently awarding a share of one spouse's expectancy to the other may often prove illusory. Because such an order is not supportable as an assignment of property, it ordinarily terminates upon the death of either spouse. H. Clark, supra, § 14.9, pp. 461–63; see *McCann* v. *McCann,* 191 Conn. 447, 452, 464 A.2d 825 (1983); *McDonnell* v. *McDonnell,* 166 Conn. 146, 150, 348 A.2d 575 (1974); *Harrison* v. *Union & New Haven Trust Co,* 147 Conn. 435, 440, 162 A.2d 182 (1960). The circumstances of the parties may have changed substantially by the time the expectancy is fulfilled, warranting a modification of the order. Continuing orders, such as those for periodic alimony, are

---

[5] *Silver* v. *Silver,* A-606, Rec. & Briefs, Position 1, Rec. p. 20.

subject to modification for changes in the circumstances of either party. General Statutes § 46b-86; *Connolly* v. *Connolly,* supra, 473; *Sanchione* v. *Sanchione,* 173 Conn. 397, 407, 378 A.2d 522 (1977). The expectancy may never be realized because of diminution of the donor's wealth or a change in the planned disposition of his property. Indeed, the existence of an order that a prospective beneficiary share his future inheritance with his former spouse may well inhibit the donor in selecting the recipients of his estate or induce resort to various devices, such as spendthrift trusts, in order to circumvent the alimony award. Relying upon such an illusory order, a court may assume that adequate provision has been made for a needy spouse and neglect to provide more dependable means of support, such as a sufficient periodic alimony order or a greater share of assets owned at the time of the decree. To uphold the award of a share of an expectancy as contingent alimony might fairly be viewed as sanctioning in a different guise an assignment of property not then within the jurisdiction of the court, which we have concluded § 46b-81 does not authorize.

The trial court may well have thought it had gone as far as possible in ordering the conventional forms of alimony, such as the order of $150 per week, and that the defendant had been given the maximum share of the total assets of the parties that could be justified. The court properly was concerned that the difficult economic circumstances of the parties at the time of the judgment made it impossible to provide adequate support for the defendant wife and that this deficiency in the award should be redressed whenever the plaintiff should acquire his anticipated wealth. We can perceive no advantage, however, in attempting to make such an adjustment prospectively rather than wait until the contingency has been resolved. Because periodic alimony orders are modifiable when changes in circum-

stances occur, the increase in the plaintiff's financial ability that may occur upon his mother's death would constitute a change of circumstances ordinarily warranting an increase in the weekly alimony payment order corresponding to the defendant's support requirements at that time. *Shrager* v. *Shrager,* 144 Conn. 483, 487, 134 A.2d 69 (1957); H. Clark, supra, § 14.9, pp. 460–61. The court will be in a far better position to make an appropriate order once the plaintiff has acquired the property he expects to receive from his mother. His own needs, as well as those of the defendant, may then be different from those presented at trial. Our modification statute, General Statutes § 46b-86, reflects the legislative judgment that continuing alimony payments should be based on current conditions. Any prediction of what justice between the parties may require when a future event may occur is likely to be less well considered than a determination made after the event, when speculation as to the circumstances involved has been supplanted by actuality. We conclude, therefore, that in the absence of some necessity not presented by this case it is erroneous to award alimony in the form of a share of the assets a spouse may receive upon fulfillment of an expectancy. Accordingly, we reverse the judgment of the Appellate Court upholding such an award.

## III

Our conclusion that the award of a share of the plaintiff's prospective acquisition of property from his mother cannot be upheld as an assignment of property or as alimony does not fully resolve the issue concerning the admissibility of evidence relating to his expectancy. The plaintiff claims not only that the provision of the judgment containing this award is invalid, but also that he is entitled to a new trial because the evidence relating to his mother's wealth should have been excluded and its admission over his objection "affected

the outcome of the entire case." We must therefore decide whether such evidence may be considered in making a property division of presently owned property or in awarding alimony.

In *Krause* v. *Krause,* supra, 364–65, this court upheld a ruling of the trial court that excluded evidence of the potential inheritance of a wife from her mother, claimed to be relevant to the husband's demand for an assignment of a share of the property held by his wife. "Unlike future earnings, prospects for increase in the husband's property through gift or inheritance generally may not enter into the computation of alimony. Such sources of wealth are outside the husband's control and subject to the will of the donor or relative." H. Clark, supra, § 14.5, p. 444. As we indicated in *Krause,* we approve the view of those courts that have held evidence of a possible future inheritance to be inadmissible for the purpose of a property assignment or alimony award. *Whitney* v. *Whitney,* 164 Cal. App. 2d 577, 330 P.2d 947 (1958); *McCloskey* v. *McCloskey,* 359 So. 2d 494 (Fla. App. 1978); *Turi* v. *Turi,* 34 N.J. Super. 313, 112 A.2d 278 (1955); see *Hillery* v. *Hillery,* 342 Mass. 371, 173 N.E.2d 269 (1961). Many of the reasons we have advanced for invalidating the award to the defendant of a share of the plaintiff's expectancy as either an assignment of property or as alimony apply also to the consideration of such evidence in respect to other issues. To base a division of property, which is not ordinarily subject to modification, upon the possibility of a future inheritance might often prove to be unfair in the light of subsequent events. A periodic alimony order, disobedience of which invokes the penalty of contempt, should not exceed the current financial ability to meet it of the party on whom it is imposed and, therefore, should not be premised upon predictions as to future income that depend wholly upon the generosity of others for realization. The authority of a court

to modify a periodic alimony order to correspond with changes in the financial circumstances of the obligor removes any necessity for considering such a contingency as the possibility of a future inheritance.

The Appellate Court concluded that the prohibition expressed in *Krause* against the introduction of evidence of a possible inheritance by a spouse had been modified by our decision in *Anderson* v. *Anderson,* 191 Conn. 46, 55–57, 463 A.2d 578 (1983), where we upheld a finding that a wife had the possibility of future acquisitions of capital assets based upon evidence of substantial contributions made during the marriage by her mother and brother.[6] The *Anderson* opinion, however, recognized the continuing viability of *Krause* in respect to consideration of "an expectancy of an inheritance," but held that consideration of substantial gratuities received from relatives in the past was, nevertheless, permissible in formulating financial orders relating to a dissolution of marriage. Although reliance upon evidence of past gifts to a spouse from relatives carries some of the risks inherent in the consideration of a future inheritance, we view them as less significant. At least where the past gratuities have been made on a regular basis during the marriage, as in the present

[6] The Appellate Court also relied upon *Thompson* v. *Thompson,* 183 Conn. 96, 438 A.2d 839 (1981), where we found the admission of evidence of a potential inheritance to be a harmless error. The evidence in *Thompson* tended to show that the plaintiff wife and her mother jointly owned, inter alia, a savings account in the amount of $9886.93, and several savings certificates in the aggregate amount of $21,786.65. The plaintiff offered evidence indicating that she was to receive one fourth of her mother's estate upon her death. Addressing the plaintiff's claim that the trial court had erred in relying upon the evidence of the potential inheritance, we stated: "Faced with the bare fact of joint ownership in the savings accounts, the court could well have treated the accounts as the plaintiff's assets. By taking into consideration the proffered evidence showing that only one quarter of these assets were destined for the plaintiff, the court diminished the size of her estate. This, of course, worked to her advantage. Because the court's action was favorable to the plaintiff, it is not a ground for reversal. See Maltbie, Conn. App. Proc. § 39." Id., 99.

case where the plaintiff admittedly was receiving income of $6000 per year from the trust established by his brother-in-law and a $10,000 annual gift from his mother, the court may reasonably assume that those contributions will continue. If they should terminate, any periodic alimony award may be modified, although an assignment of property based upon the assumption that the contributions would continue could not be revised. We have found error in an alimony award to a wife predicated upon a finding that a husband would continue to receive a consistent and dependable flow of funds based upon sums his mother had advanced sporadically during the marriage for various purposes. *Schmidt* v. *Schmidt,* 180 Conn. 184, 187, 429 A.2d 470 (1980). Where financial orders are based upon a possible inheritance, which may never materialize in any form or at any time remotely corresponding to the trial court's assumptions, the risk of inequity is substantially greater. Furthermore, evidence of past gratuities does not inevitably entail the necessity of probing into the personal financial affairs of persons who have no other involvement in the marital dispute before the court than their relationship to one of the parties. We continue to adhere to the *Krause* view that evidence of a prospective inheritance is inadmissible in a dissolution of marriage proceeding. See *Fattibene* v. *Fattibene,* 183 Conn. 433, 443, 441 A.2d 3 (1981). Our conclusion that the trial court erred in admitting evidence of the plaintiff's possible inheritance from his mother requires that we order a new trial rather than simply modify the judgment by invalidating the award of a share of his expectancy. It is impossible to ascertain the extent to which this inadmissible evidence may have affected the other financial orders, but we cannot regard the admission of the evidence as harmless error, except with respect to the portion of the decree dissolving the marriage.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to set

aside the judgment, except for the provision thereof dissolving the marriage, and to order a new trial on the financial issues.

In this opinion the other justices concurred.