[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married on September 8, 1973 in Torrington, Connecticut and have three (3) minor children, ages 16, 14 and 3 issue of the marriage. The parties were married after the plaintiff graduated from high school. The defendant was twenty-two (22) years of age at the time of the marriage.
The plaintiff entered college immediately after the marriage and received her degree from Central Connecticut State University in 1977. While the plaintiff had been employed part-time while in school, she remained out of the workforce after graduation for a year because of the birth of their second child. The plaintiff became employed as an aide in the Torrington Public School system where she held a variety of positions for approximately ten (10) years. She supplemented her work during the summers at Rescue and her sister's market. Apart from a short interruption, the plaintiff was fully employed in and outside the home during the entire course of the marriage.
The defendant was employed at the Torrington Company from the time of his high school graduation and continues to be so employed currently. He attended college for credit but did not receive a degree. He is currently in good physical health except for a slight back problem. The plaintiff enjoys good health.
The parties lived in apartments in Torrington through June of 1987 when they cleaned and renovated the CT Page 8142 plaintiff's mother's home at 307 County Road. The parties were able to lease on a net-net-net basis the mother's home for approximately $380.00 per month. The home is on a half acre lot in a residential neighborhood of single family homes. It is a seven room home with one and one-half baths. As their family grew their rental cost was at least that much for an apartment. The move into the mother's home improved the quality of surroundings for the children.
The plaintiff began working at the Torrington Company at approximately the time of their move. The plaintiff thereafter gave birth to their third child. The parties aspired to buy the property from her mother, but because of credit difficulties, their application was denied and they were unable to complete the purchase. The plan was to pay the mother an amount greater than the existing mortgage and provide her mother with additional income.
The plaintiff complained that the cause of the breakdown of the marriage was his alcoholism and his self-centered and rather juvenile insistence to spend time away from the family at social clubs and bars where he pursued an interest in gambling. While his gambling habit did not appear to be extreme, he certainly compromised the family's financial status because of his habits. If the defendant did have dinner at home, he would eat, retire to his chair and consume 6 to 12 beers per night.
To his credit, at this stage of his sobriety, he admitted his conduct. He claimed that he did participate in the family's life by working on rehabilitating his home, and assisting his mother-in-law in moving into her new home, and in participating in sports activities extensively with his sons, Scott and Jeffrey. But it must have been painful and frustrating for his family, because ultimately, it was the expressed anger of his oldest son that finally got him to recognize the serious damage he had caused to their lives by his drinking. After a period of time in early 1990 when his drinking became more extreme, a number of incidents escalated into an argument, and on March 20, 1990, his two older boys expressed disgust. His son Scott told him he was "sick and tired of seeing him drunk." The defendant began his recovery that day.
Of course, it was far too late to save the marriage. The plaintiff had long before abandoned her belief that she had a marriage and had developed at least an emotional involvement with another man. Her lack of interest in the defendant was understandable, and he only started paying attention after years of damage had been done. CT Page 8143
The damage to the children, especially the two oldest male children, of this marriage was painfully obvious. The children and father are in serious need of counseling. Because the parties engaged in counseling at Catholic Family Services early on in the case (which was not productive and terminated before any progress was made) and because they have agreed to joint custody, no serious intervention was made by the court and family services in this case. The court is gravely concerned about the future relationship of the parents and children based upon plaintiff's extra-marital involvement and defendant's alcoholism. The court can accept their agreement of joint custody only if they sincerely pursue a course of counseling to allow the children to work through what has been presented to them by their parents. The court has concerns that the adolescent male children be educated concerning the long range affect of dad's alcoholism on their behavior so that perhaps they can be spared repeating the lessons he taught them so well by his conduct as they grew.
After reviewing the evidence and claims of the parties in light of the statutory criteria, the court makes the following awards:
1. Custody and Visitation. As indicated earlier, the court can ratify the agreement for joint custody on the condition that the parties engage in counseling. Counsel for the parties are to report compliance of this order in six (6) months. The children shall reside primarily with the plaintiff mother and the defendant shall have reasonable rights of visitation on Tuesdays from 4:00 p. m. to 7:00 p. m. and Saturday from 8:00 a.m. to Sunday at 8:00 p. m.
2. Child Support. The defendant shall pay support in accord with the Uniform Support Guidelines. Child support shall be paid in the amount of $195.00 per week on a net weekly average income of $388.00. The parties shall maintain the children as beneficiaries on available life insurance provided through their employers. The defendant shall cover the children on his medical plan and the parties shall share equally all unreimbursed health-related expenses.
The defendant shall secure a further term life insurance policy, which may have a decreasing value to secure his obligation to pay child support, until the youngest child reaches the age of eighteen. The face value of this policy shall be seventy-five thousand ($75,000.00) dollars.
3. Marital Property. The defendant argues that the CT Page 8144 residential property owned by plaintiff's mother which the parties were unable to purchase during the marriage is their property subject to distribution by this court. The court disagrees. Like her interest in her grandfather's estate, it is a mere expectancy, not subject to distribution. The case law is quite specific. See Bartlett v. Bartlett, 220 Conn. 372
(1991); Rubin v. Rubin, 204 Conn. 224 (1987); Eslami v. Eslami, 218 Conn. 801 (1991). The cases leave any expectancy available for later consideration through the granting of periodic alimony.
 a. Savings Accounts. Each party shall maintain their respective savings accounts.
 b. Retirement/Pension Plans. Each party shall retain any interest in any retirement plan for their sole use.
 c. Automobiles. The wife shall retain her 1992 Dodge Shadow, and shall quit claim any interest in a 1987 Chevrolet Camaro and 1984 Pontiac Sunbird to the husband.
 d. Personal property. The defendant shall have a bedroom dresser, his grandmother's sewing machine, his grandmother's cedar chest, autographed baseball memorabilia, and any other personal and sporting equipment that might remain in the family home not utilized by the minor children.
 e. Indebtedness. The parties shall be responsible for the debts listed on their respective financial affidavits and hold the other harmless therefrom.
 f. Attorneys Fees. Each party shall be responsible for his or her counsel fees.
4. Periodic Alimony. At the close of the evidence in this case, defendant seemed to abandon his claim that the court could award him lump-sum property distribution based upon the plaintiff's contingent interest in her grandfather's estate. Rather, he claimed that he was entitled to alimony from the plaintiff.
Plaintiff does not seek an award of periodic alimony. Defendant predicates his claim on his health, citing the prospect that his bad back might limit his ability to work in the future. The defendant has been employed as a CT Page 8145 corporate driver for the Torrington Company. His claim was that his current position might aggravate his back condition and necessitate employment change. The issue of one's obligation to pay periodic alimony must be reviewed in light of all of the statutory criteria only one of which is the issue of health. The employment status of each party, their ability to acquire assets, as well as education and capacity to increase their employment potential are also before the court. In deciding the issue at the time of the decree the court may also review the cause of the breakdown of the marriage to determine if there is a continuing obligation to support the other spouse.
The court finds that the issues surrounding the breakdown of this marriage make defendant's claim for periodic alimony untenable. The plaintiff maintained a home, bore and raised three children, while accepting defendant's decision, conscious or unconscious as a result of his addiction, to pursue his own needs over those of his wife and children. He compromised their ability to acquire assets during the course of the marriage. The defendant has not demonstrated by this record that his employment is in jeopardy nor that he in the future, with his sobriety will be unable to acquire assets. The plaintiff will continue to have the bulk of the responsibilities surrounding child care and maintenance.
The defendant's insistence in having his own needs met was demonstrated by his disruptive actions during the dissolution process. The defendant refused to accept the reality of his wife's decision to divorce, and engaged in violent behavior by taking the youngest child, at age three, and keeping him away from his mother for a number of days before finally agreeing to return him. The defendant engaged in this behavior during his sobriety. For the court to allow a $1.00 alimony order to remain open, would invite further conflict between the parties. The children of this marriage have been adversely affected by their parents' conflict and that must now end.
The marriage is dissolved and judgment shall enter in accord with this opinion.
DRANGINIS, J.