[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR MODIFICATION,CODED 134, AND DEFENDANT'S MOTION FOR COUNSEL FEES, CODED 135
Many of the facts that give rise to the above two motions are in dispute. The marriage between the parties was dissolved on November 9, 1994. An agreement entered into between the parties, dated November 4, 1994, was incorporated by reference in its entirety into the judgment file. That agreement provided in Article II as follows:
 A. The HUSBAND shall pay to the WIFE the sum of One Dollar ($1.00) per year as alimony until the happening of the earliest of the following events when said alimony shall terminate and cease forever:
1. The WIFE'S death;
2. The HUSBAND'S death;
3. The WIFE'S remarriage;
 4. The WIFE'S regular cohabitation with an unrelated male within the meaning of Connecticut General Statutes § 46b-86 (b);
5. November 9, 1999.
Said alimony shall be nonmodifiable as to term only
 B. The parties agree that because of the HUSBAND'S representation that his current gross income is $351.82 per week that any future Motion for Modification of Alimony filed by the WIFE to increase the ONE DOLLAR ($1.00) per year alimony payment shall be a fresh de novo determination of alimony of the Danbury Superior Court of the State of Connecticut. The parties CT Page 11458 agree that said court shall retain jurisdiction for that purpose. Each party shall provide a copy of his/her federal income tax return annually to the other by April 30 of the following year. (For example, each will provide his/her 1994 federal income tax return to the other by April 30, 1995.)
The plaintiff, in paragraph 2 of the motion for modification, seeks a de novo determination by this court on the issue of alimony which de novo determination is granted. The motion to modify alimony was served on the defendant, in hand, by a sheriff on June 12, 1996 as a result of which the court may retroactively enter any alimony modification order that may be entered. The defendant's motion for counsel fees, coded 135, alleges in part as follows:
 The plaintiff has been cohabitating with an unrelated male for at least six months and has been receiving financial support and/all other benefits as a result of the relationship. The plaintiff's filing of the motion for modification including conducting two depositions of the defendant and his wife were done primarily for the purpose of harassing the defendant and was not pursued in good faith.
The court finds that there is no credible evidence that the plaintiff has been cohabiting with an unrelated male and has been receiving financial support and/or other benefits as a result of the relationship. The court further finds that the plaintiff's filing of the motion for modification and the conducting of two depositions of the defendant and his wife were not done primarily for the purpose of harassing the defendant and were pursued in good faith.
The court finds the following additional facts. The plaintiff is forty-five years old. She has neck and back injuries as a result of a motor vehicle accident. She is also being treated for bleeding ulcers which requires daily medication and required hospitalization in the summer of 1996. She also has been diagnosed with Lyme disease in the spring of 1996. She obtained her bachelor's degree in psychology/sociology in 1974, but has never worked in that field. She obtained her real estate license in 1982 in Indiana. She passed two real estate courses in CT Page 11459 Connecticut in 1995. The parties have two children from the marriage, one of whom is an adult, and the second who now resides with the plaintiff. The two children were born in 1976 and 1980. She did not work following the birth of her children until 1982 when she commenced earning between $5 and $8 per hour as a leasing agent. Her highest income was working as a property manager earning approximately $20,000 per year. She left that employment in 1985 to join the defendant in Connecticut. Her only employment since 1985 has been as a substitute teacher in the Ridgefield public schools. She does not currently have her teacher's license and is therefore not eligible for full-time employment as a teacher.
The defendant is fifty-three years old. He has back problems, prostate problems, a hernia and a heart murmur. He has a bachelor's degree in history and a graduate law degree although he has never practiced law. He worked in the insurance field commencing shortly after the plaintiff and defendant married until he left the Hartford Insurance Company in 1989 or 1990 and established Claim Services International (hereinafter referred to as CSI). The parties are in dispute regarding the defendant's income and regarding the plaintiff's income. The plaintiff's financial affidavit, dated April 29, 1997, shows gross weekly income of $52 for the period of January 1, 1997 to April 28, 1997, and net weekly income of $48. She also has weekly income from Fidelity Investments of $62. Her weekly expenses total $1022. She has liabilities totalling $55,877, and weekly payments on those liabilities totalling $129. She has assets totalling $96,025. Included in her assets is a Fidelity Investment account with a value as of April 29, 1997 of $68,525.01. She also has a one-third remainder interest in certain trusts. There are two trusts in which the plaintiff is a one-third remainder person. In one of the trusts, the income and the principal is payable to the plaintiff's mother, Blanche Southwell Shipton. Upon the death of the plaintiff's mother, the plaintiff then receives benefits from that trust. The plaintiff has not received any income or principal from that trust. The second trust has the following language in it: "It is the donor's request that in making payments of income and/or principal the donor's daughter, Blanche S. Shipton, shall be preferred." All of the payments from that trust have gone to Blanche S. Shipton and no payments of principal or interest have gone to the plaintiff. In Eslami v.Eslami, 218 Conn. 801, 806-807 (1991), the court stated in part as follows: CT Page 11460
 In the present case, the interest of the wife in her father's estate had vested upon his death and had ceased to be a mere expectancy. Its value, however, could not be ascertained with certainty because of the unresolved will contest, which continued to generate expenses to be borne by the wife.
 In Rubin we mentioned some of the hazards of basing financial awards on expectations or contingencies that ultimately may never be realized wholly or partially. Relying upon such an illusory order, a court may assume that adequate provision has been made for a needy spouse and neglect to provide more dependable means of support, such as a sufficient periodic alimony order or a greater share of assets owned at the time of the decree. Rubin v. Rubin
[204 Conn. 224], supra, 235. Although the interest involved here had vested in the wife at the time of trial, the court could reasonable have concluded that uncertainty as to the amount she would eventually receive from her father's estate militated against consideration of that interest for the purpose of the financial awards. [Internal quotations marks omitted.]
The next case that is relevant to the issue of the interest of the plaintiff and the trusts in question is Bartlett v.Bartlett, 220 Conn. 372, 384 (1991) where the court stated in part as follows:
 For example, if the court had been able to ascertain the value of the defendant's interest with reasonable certainty, it could have entered an order in which the increase in the award of periodic alimony would accrue until such time as he actually received the inheritance or was otherwise able to pay his obligation. Such an order would have extended the benefit of the modification to the plaintiff and would have simultaneously protected the defendant from the threat of being held in contempt for disobeying a modified alimony order that might have exceeded his current financial ability to meet it. See CT Page 11461 Rubin v. Rubin, supra, 237. If, on the other hand, the court had not been able to make a proper valuation of the inheritance, it could have done what the trial court in Eslami
effectively did: postpone consideration of the inheritance until such time as its value could be ascertained with reasonable certainty. Because the court never reached the issue of valuation, however, we cannot uphold its decision to deny the motion.
The court finds that it has not been able to a ascertain the value of the plaintiff's interest in either of the two trusts with reasonable certainty. The court is therefore postponing consideration of the inheritance of the plaintiff from the two trusts until such time as its value can be ascertained with reasonable certainty.
The defendant's financial affidavit, dated June 3, 1997, shows gross weekly income from CSI of $102.50 less weekly deductions, no gross weekly income from Bettermen Group, and no gross weekly income from individual broker/property-casualty.
The two motions before the court resulted in approximately eleven days of testimony with the plaintiff introducing seventy-seven exhibits and the defendant introducing fourteen exhibits into evidence. The trial dates spanned November 18, 1996 to June 4, 1997.
From the evidence presented, the court finds that each party was equally at fault for the breakdown of the marriage. The plaintiff has not remarried. The defendant has remarried.
The defendant's current wife, Crystal Carvahlo, is responsible for all of the bookkeeping for CSI. This court has never seen a case with worse bookkeeping practices or business practices in general than exists with CSI. Those bookkeeping practices included the following: (a) the use of corporate credit cards for personal use without any proper documentation as to which charges were corporate and which charges were personal; (b) the payment on corporate credit cards by CSI without any proper documentation as to whether the payments were being made for corporate or personal expenditures; (c) excessive expenditure for business moving expenses; (d) the failure of the defendant to draw proper W-2 wages for himself. CT Page 11462
The defendant and his current wife presently reside in a rental home in Ridgefield, Connecticut, at a monthly rental of $2100. The rent is paid by the defendant's current wife. The parties are current in their rental payments.
The defendant claims that CSI is not in good financial condition. The court is not persuaded by that argument. CSI has created excessive expenditures for business moving expenses which it has been able to substantially repay and has also recently set up a 401-K plan to primarily benefit the defendant's current wife.
In 1995, the defendant decided to move the office location of CSI. The cost of that move to CSI was approximately $70,000. By early 1997, CSI had paid most of that $70,000. The $70,000 initially came from three loan sources: (a) medical reimbursements due to the defendant; (b) proceeds from the sale of the plaintiff and defendant's former marital residence; and (c) the defendant's current wife's funds. The three sources of "loans" was substantially repaid by 1997.
CSI has written off as business expenses under the general category of "marketing" many of the credit card expenditures. In 1995, it showed expenses under marketing $44,035.61. Neither the defendant nor his present wife could adequately account for that expenditure. In 1996, CSI made loan repayments to the defendant and his current wife totalling $36,190.47.
In determining the question of the defendant's income, the court is using the period of January 1, 1997 to April 15, 1997. During that period of time, the defendant only received 1099 income from CSI. That income consisting of checks numbered 2258, 2276 and 2336 totalled $1800. During the period of January 1, 1997 to April 15, 1997, the defendant's wife received 1099 income through checks numbered 2347 and 2454 totalling $468.57. In addition, between January 1, 1997 and April 15, 1997, the defendant's current wife received gross W-2 wages from CSI of $19,000. The combined W-2 and 1099 wages for the defendant and his present wife from CSI for the period of January 1, 1997 to April 15, 1997 was $21,268.57. That amounts to an average gross weekly wage of $1417.90. The defendant claims that CSI would not be able to operate as a viable business without the presence of his wife. The court finds that claim is not credible. The court finds that he is paying her an excessive amount with the result CT Page 11463 that he is drawing an inadequate amount for himself and is thereby voluntarily reducing his income. The defendant's present wife testified that she would continue working for CSI even if she did not receive any wages. In determining the plaintiff's motion for modification of alimony, the court is allocating gross wages to the defendant of $1000 weekly, less deductions, and gross wages to his present wife of $417.90 weekly.
CSI has a number of full-time employees. It is in the business of assisting attorneys to prepare and work up personal injury files and also does claims adjusting for its clients. It has a number of full-time employees. One of its full-time employees is earning at the rate of approximately $1150 per week. The court finds that the defendant is capable of earning as much as that employee earns. He claims that he is physically unable to do the driving that is necessary in order for him to carry out the work functions of that employee. The court finds that that claim is not credible. The court therefore finds that the defendant has an earning capacity of $1150 per week, although the court is using $1000 per week for the purposes of entering the orders hereinafter entered less appropriate tax deductions.
This court has considered the provision of § 46b-82 regarding the issue of alimony, and has considered the provision of §46b-62 regarding the issue of attorney's fees. The court enters the following orders:
ORDERS
1. Alimony is increased to $200 per week retroactive to June 12, 1996.
2. No attorney's fees are awarded in favor of the defendant.
3. The arrearage created by this order is to include interest at the rate of 10 percent per annum effective on the date this decision is filed.
4. The payment of the arrearage is to be made at the rate of $30 per week, commencing one week from the date this decision is filed, with payments first applied to interest and then applied to principal. When alimony has terminated, then payment of the arrearage is to be made at the rate of $200 per week.
5. The plaintiff is ordered to notify the defendant by CT Page 11464 registered mail, return receipt, or certified mail, return receipt, within thirty days of the death of her mother. In the event the plaintiff fails to so notify the defendant that, in such event, any subsequent motion to modify by the defendant as a result of the death of the plaintiff's mother may have orders entered retroactive to the date of death of the plaintiff's mother. The court is not ordering at this time that any failure of the plaintiff to properly notify the defendant of the death of the plaintiff's mother shall result in any modification of alimony order being retroactive to the date of death of the plaintiff's mother, but rather is ordering that the court hearing any such motion will have the power to enter such a retroactive order.
Axelrod, J.