[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, hereinafter referred to as the wife, and the defendant, hereinafter referred to as the husband, were married on October 22, 1967. They have been residents in this state for at least one year prior to the filing of the complaint; therefore, the court has jurisdiction. The parties had two daughters, both have reached their majority and are now living on their own.
The parties separated in July, 1991 and have lived apart for approximately thirty months. A written stipulation was filed stating that their marriage has broken down irretrievably with no hope of reconciliation. The court, therefore, finds that the marriage has irrevocably broken down and a decree of dissolution is granted pursuant to 46b-40(c)(1) of the Connecticut General Statutes.
The background facts are not in dispute. Both parties. agreed that neither had any financial assets at the time they were married. Their first daughter, Patricia, was born about a year after their marriage and the second daughter, Kasey, about three years later. During these first five years, by agreement, the wife CT Page 10863 was the primary caretaker for the children and assumed most of the responsibilities maintaining the marital home, including managing the finances. The next ten years the wife worked part-time as a baby-sitter and also selling real estate as well as caring for the children and the home. The husband worked full time as a school teacher and was the primary breadwinner, helping with the children and the home when he could.
To supplement his teacher's salary, the husband also held a number of part-time jobs, coaching after school hours and painting houses during summer vacations. The court finds that both parties were dedicated and hardworking and the family benefited because of their joint efforts. As a result, and to their credit, their two daughters did exceptionally well in high school and both graduated from college.
The parties have not been able to agree on the division of two primary assets, the marital home and their respective teacher's pensions. The division of property is to give to each spouse what is fair and equitable. Rubin v. Rubin, 204 Conn. 224,228 (1987). The court may assign to either party all or any part of the marital assets pursuant to 46b-81(a) of the Connecticut General Statutes. The court has considered all the criteria set forth in 46b-81(c) of the General Statutes, including the contribution each party made to the acquisition, preservation or appreciation of the property during their twenty-six-year marriage.
The parties purchased their present home jointly for $62,000.00 in 1976. They applied the equity from the sale of the first home, which they also jointly owned, and with a first mortgage loan, completed the purchase. The costs for maintaining the homes and supporting the family were paid primarily from the husband's salary and his earnings from part-time employment from about 1968 to 1982. During this fourteen year period, by agreement, the wife stayed home to care for their two daughters and the husband worked full time as a school teacher. In 1982, the wife also began working full time as a teacher and continued working in the home as mother and spouse. She deposited her teacher's salary in the joint family checking account to pay household and family obligations.
Based on these facts, the court finds that the wife's efforts, nonmonetary as well as monetary, were at least equal to the husband's contributions to acquiring and maintaining these two primary assets. Her staying at home for this fourteen year period CT Page 10864 enabled him to acquire twenty-five years of credit in the state teacher's pension, with present vested benefits of about $92,000.00, and his present annual salary of $73,200.00. On the other hand, the wife has only eleven years of service, with about $20,000.00 vested in her state teacher's pension, and she now earns a present annual salary of $40,167.00.
In O'Neill v. O'Neill, 13 Conn. App. 300 (1988, at page 311, the court stated as follows:
 "A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities."
After considering all the facts, the statutory criteria, the case law, the exhibits in evidence, the financial affidavits, and the claims for relief, the following orders are entered as to the division of the marital home and the teacher's pensions.
I. MARITAL HOME 16 RIDGE ROAD, NEWTOWN, CONNECTICUT
The wife is granted exclusive possession of the residence from the date of this judgment until July 1, 1996. At that time, the property shall be appraised by a qualified real estate appraiser agreed to by the parties. If the parties cannot agree on an appraiser, each shall select an appraiser and the two appraisers shall agree. If the two appraisers cannot agree, they shall select a third appraiser and the listing price shall be the average of the three appraisals. Any cost or expense connected with the appraisal process shall be shared equally by the parties.
The wife shall have the option of purchasing the husband's interest in the property within thirty (30) days of the receipt of the appraisal report. If this option is exercised, title will close CT Page 10865 within sixty (60) days thereafter. The purchase price shall be fifty (50%) per cent of the equity in the property, determined as follows: the appraisal price reduced by the then outstanding principal balances on the first and second mortgages, a $16,000.00 credit to the wife for reasons explained herein, and normal closing costs.
After he left the marital home, the husband gave a friend $13,000.00 and retained $3,000.00 for personal needs from the $45,000.00 home equity loan, now a second mortgage on the property.
In the event the wife does not exercise this option, the property shall be listed for sale at the appraised value. Any bona fide offer within five (5%) per cent of the listing price shall be accepted. The parties may agree to accept any lesser sales price. After the payment of the two mortgage debts then due, the wife's credit of $16,000.00 (referred to previously), broker's commission(s) and other normal closing costs, the net proceeds shall be divided equally (50%-50%) between the parties. This court shall retain jurisdiction in the event there, is any disagreement between the parties regarding the terms and conditions of the sale or transfer of this real estate.
Until the house is sold, the wife shall pay the costs of all maintenance including any repairs under $100.00 and payment of the first mortgage, real estate taxes, and insurance payments. She shall be entitled to all deductions for interest and taxes on her federal and state tax returns.
Commencing January 1, 1994 and continuing on the first day of each month thereafter until the wife either exercises her option to purchase, or the house is later sold, the husband shall pay the sum of $232.55 per month to the Waterbury Teachers' Federal Credit Union on the home equity loan (which is also referred to as the second mortgage on the property). Although the husband's affidavit shows a monthly payment of $1,000.00 for this loan, the minimum interest payment required is $232.55, which is the amount the court orders him to pay.
The parties shall not further encumber the property without further order of the court.
II. TEACHER'S PENSIONS
As of June 30, 1993, the husband had a total vested CT Page 10866 contribution of $92,313.91 for twenty-five years of service and the wife had $19,798.77, with ten years and nine months of service. (Plaintiff's exhibit C.)
The husband shall assign to the wife from his teacher's retirement account the amount necessary to equalize her retirement account to his, so that they each have the same amount vested (50 per cent each) in their respective accounts at the date of this judgment. The wife's attorney shall prepare a Qualified Domestic Relations Order (QDRO), and the parties and both attorneys shall execute any documents necessary to comply with this order. Such order shall provide that the parties relinquish any survivor's interest in or to their respective equalized pension accounts.
III. ALIMONY
In addition to the assignment of property under 46b-81
of the Connecticut General Statutes, the court may order periodic alimony to either party and, again, shall consider all the factors set forth in Connecticut General Statutes 46b-82, the alimony statute.
First, this is a twenty-six year marriage where the parties have agreed that fault should not be considered a factor in determining alimony.
The primary reason for alimony is to continue the duty to support a spouse and not to punish either party. Tobey v. Tobey,165 Conn. 742, 748 (1974); Leo v. Leo, 197 Conn. 1, 5 (1985).
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, . . .the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred CT Page 10867 over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980).
In addition to the home and the pensions, the parties have some liquid assets. The husband has mutual funds totalling $19,192.00 in a 403B plan, and the wife listed assets of approximately $26,561.00 in a tax sheltered annuity ($13,816.58) and an IRA ($10,227.45) and bank accounts ($2,517.00).
The husband has requested a nominal alimony award of $1.00 a year. On his present annual salary of $73,200.00, his age, and good health, the husband is able to support himself. Therefore the court denies his claim for $1.00 a year alimony.
As for an alimony award to the wife, the court has considered relevant that she contributed about $200,000.00 to the family in 1987 from a stock distribution she received from her father. Instead of investing these funds for herself, she deposited the funds in a joint family account. She paid about $160,000.00 for tuition and other college costs for their two daughters and $30,000.00 to renovate the family home. The balance went for a family vacation and a family membership in a country club. In 1993, she was given another $21,000.00 which again she used for her family rather than keeping it for herself. If she had kept and invested these funds for herself, the $1.00 per year alimony award to her for twelve years urged by the husband would have had more validity.
The assets in the wife's affidavit listed as Insurance Trust and Credit Shelter have an unknown value at this time. Her father has $411,000.00 from her mother's testamentary trust, in which the trustees have the unrestricted power to invade income and principal primarily for his benefit or the plaintiff and her other five brothers and sisters. The father is now 71 years old and in good health. This entire amount could be distributed to him or the other five siblings during their lifetime. The father's insurance trust is also subject to his life use and the value is undeterminable at this time. CT Page 10868
The court finds that these are potential assets which may be exhausted by distribution to other beneficiaries by the trustees. They are too speculative to consider in determining her alimony award at the present time. Rubin v. Rubin, 204 Conn. 224,234-237 (1987).
Based on the testimony and the current financial affidavits, the court finds that the husband earns an annual salary of about $73,200.00 and the wife earns $40,167.00 annually or $33,000.00 less. The court also finds that the husband has available a net weekly income of almost twice that of the wife, $1,028.00 to $564.00. The wife's current net expenses are about $750.00 a week, a shortage of about $186.00 per week.
Based on these facts and considering the needs of the wife and all the statutory factors in 46b-82 (the alimony statute), the prior division of assets pursuant to 46b-81, 46b-62
relative to attorney's fees, the case law, and the parties' financial affidavits, the court makes the following orders regarding alimony:
1. The husband shall pay the wife as periodic alimony the sum of One Hundred Seventy Five ($175.00) Dollars per week commencing January 4, 1994, and continuing weekly thereafter until the happening of the first of the following events:
(a) the death of either party;
 (b) the wife's remarriage or statutory cohabitation pursuant to 46b-86(b) of the Connecticut General Statutes;
 (c) upon the wife's retirement, but not before May 1, 2005, the date she is eligible to retire as a teacher.
 The court has carefully considered the consequence of time limited alimony, given all of the factors in this case, especially the length of the marriage. However, given the assignment of a substantial portion of the husband's present retirement fund to equalize their accounts and equalizing their rights to the marital home and the wife's ability to earn income as a teacher, the court feels that this time limited award is fair and reasonable and that some time during his retirement years, the husband can be relieved of the obligation to provide for the support of his wife. The court believes that her financial needs are and will be adequately CT Page 10869 cared for by the awards made herein.
2. Payment of alimony shall be nonmodifiable as to term.
3. The husband shall name the wife irrevocable beneficiary of his two present life insurance policies as shown on his financial affidavit which total $150,000.00 for so long as he is obligated to pay alimony to the wife under this judgment.
4. Each party shall keep the remaining bank accounts, securities, pension or retirement funds and other intangible property in his or her name and shall waive any rights or claims to the other. These assets are listed in their respective affidavits, the husband's are worth approximately $19,247.00, the wife's $26,561.66.
5. All personal property now in the possession and control of the husband or the wife shall be and remain the sole and exclusive property of that party. Any item of personal property, however, that came from either his or her family shall be owned by that party.
6. All household furniture, personal property and other personal effects in the marital residence shall be divided equally after the wife exercises her option to purchase or the house is sold, whichever event is later.
7. Each party shall be responsible for the debts listed in his or her financial affidavit.
8. Each party shall be responsible for the payment of his or her own attorney's fees.
9. Each party shall be responsible for the maintenance and payment of his or her own health insurance.
Judgment shall enter in accordance with the foregoing.
ROMEO G. PETRONI, JUDGE CT Page 10870