[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, hereinafter referred to as the husband, and the defendant, hereinafter referred to as the wife, were married on November 22, 1958, and their five children have all reached majority. Both parties have lived in Connecticut for more than one year prior to the commencement of this action. Therefore, the court has jurisdiction. CT Page 10810
The wife moved out of the marital home in Fairfield in May, 1992 and has never returned. From the testimony of both parties, the court finds that the marriage has broken down irretrievably with no hope of reconciliation; therefore, a decree of dissolution is granted pursuant to 46a-40(c)(1) of the Connecticut General Statutes.
There was contradictory testimony as to the husband's physical abuse of the wife and children in years past. From all the testimony, the court finds that each party bears some responsibility for the breakdown of the marriage and finds neither party at fault.
Fault, however, is only one of the factors which the court must consider in granting equitable orders in a dissolution of marriage. The division of marital property and alimony should accord each spouse what is fair and equitable under the circumstances. Rubin v. Rubin, 204 Conn. 224, 228 (1987). In awarding alimony or assigning property rights under 46b-81 and46b-82 of the Connecticut General Statutes, the court must consider the length of the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each party.
The background facts are not in dispute. At the time of their marriage, the husband was 20 years of age, the wife 18 and both were high school graduates. During the first twenty years of the marriage, the husband worked full time as a radio announcer and making commercials. He was the sole breadwinner for the family. The wife worked full time caring for the five children and as a homemaker for the family.
After the children were grown, the wife attended night classes at Fairfield University for many years and, to her credit, she graduated cum laude with a degree in religious studies and psychology in 1986. She was employed at Fairfield University as an assistant chaplain for the next three years earning an annual salary of $30,000.00 when she left in 1990 to pursue post graduate studies. Shortly thereafter, she received a master's degree in theology from Yale Divinity School. She expects to earn a Ph.D. in about six months. By the fall of 1994, she intends to teach at a college level and earn about $35,000.00 annually. In her opinion, her salary should increase to $55,000.00 within three years.
The husband is the sole stockholder of PRM Productions, CT Page 10811 Inc. The entire earnings of this corporation come from the husband's fees earned from his doing television and radio commercials. In past years, the husband has been financially successful in his field. From 1986 through 1990, his annual salary ranged from $136,300.00 to $230,000.00. However, during the past two years, his earnings were substantially reduced because of a poor economy and economic circumstances beyond his control. The court finds that the reduction in his earnings were without his fault.
It was the husband's fault, however, for failing to file federal income tax returns from 1986 to 1990. This resulted in a federal tax assessment against both parties of $457,834.64. The husband has agreed to pay the IRS $3,516.00 per month towards this debt. (Plaintiff's exhibit B) For 1991, the husband owes an additional federal tax of $71,779.00 for a total debt of about $530,000.00. At present, the husband is negotiating with IRS for an installment agreement for the $71,779.00 taxes owed for 1991.
The husband's current financial affidavit dated November 30, 1993 lists gross weekly income at $2,628.00, estimated at about $137,000.00 for this year. After deducting his tax liabilities, the court finds that his net weekly income is about $650.00, or $34,000.00 for the current year.
There was evidence presented by the wife that the plaintiff charged off personal expenses to the corporation that reduced his net income on his personal income tax returns (defendant's exhibit 9). Nevertheless, the husband deposited all of his earnings in a checking account. Each year the husband and his accountant would review the earnings deposited in the checking account and what expenses were personal or corporate deductions. While the plaintiff's accountant may have maximized expenses as corporate deductions, the court finds that the primary loser was IRS and not the wife. The court finds that from the husband's earnings from 1986 to date were used primarily for family needs and a minimal amount for himself.
The husband's primary assets are two vested pension plans which are listed on his current financial statement. They will pay him about $3,500.00 a month at retirement age 65. Although the plans were funded solely from the husband's earnings, the court finds that these pensions are marital assets that should be divided equally. Considering the length of this marriage and the fact that the wife stayed at home caring for the children and the home which CT Page 10812 enabled the husband to earn these funds, her nonmonetary contributions were equal to his. In O'Neill v. O'Neill, 13 Conn. App. 300, (1988), at page 311, the court stated as follows:
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities.
The following order shall issue as to the pension plans:
1. The husband shall assign one half of each of the two pensions to the wife by a Qualified Domestic Relations Order (QDRO) so that each party will have the amount vested (50 per cent each) in his or her own account effective as of the date of this judgment. Each party shall have the right to designate survivor's benefits of their respective equal share. The husband's attorney shall prepare the QDRO and both attorneys and the parties shall sign any documents necessary to comply with this order.
The wife's financial affidavit dated November 30, 1993 lists no earned income. She is studying full time to complete a doctoral thesis by this summer and needs $7,200.00 for tuition. She also has five remaining monthly payments of $430.00 per month on her automobile. At present, she is sharing an apartment and living expenses with a friend. The wife's affidavit lists her weekly living expenses at $932.79 and the husband's are $1,416.00.
This is a 35 year marriage. The wife is 53 years old; the husband is 55 years of age. Both are in reasonably good health although the wife has chronic asthma and allergies. This condition will not affect her plans to begin teaching college theology in September, 1994, and earn an entry level annual salary of $35,000.00. The husband had substantially higher earnings prior to CT Page 10813 1992. This year's net income is about 34,000.00. The federal tax debt of about $530,000.00 will substantially reduce his ability to pay alimony. The court will issue the financial orders based on current net income and the present needs of the parties.
The primary reason for alimony is to continue the duty to support a spouse and not to punish either party. Tobey v. Tobey,165 Conn. 742.
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
The court has considered the financial circumstances of both parties based on their current affidavits, all the evidence and the criteria set forth in Connecticut General Statutes 46b-81
(assignment of property) and 46b-82 (alimony) and 46b-62
(attorneys' fees) as well as the appropriate case law and enters the following orders:
1. Beginning January 1, 1994 and on the first day of each month thereafter until December 31, 1994, the husband is ordered to pay alimony to the wife in the amount of $1,200.00 per month. CT Page 10814 Beginning January 1, 1995 and on the first day of each month thereafter the husband is ordered to pay alimony to the wife in the amount of $1,500.00 per month. This order to remain in effect until the first of the following events: the death of either party or the remarriage or statutory cohabitation of the wife.
 The wife is to notify the husband of her employment within thirty days after obtaining employment. The husband shall provide a copy of his federal income tax return filing with the wife by April 16th of each year.
 Either party may move to modify this alimony award upon proof of a substantial change in circumstances pursuant to 46b-86
of the Connecticut General Statutes.
2. Beginning January 1, 1994 and continuing through to December 31, 1994, the husband is ordered to pay the following in addition to the $1,200.00 per month alimony:
 (a) the remaining five monthly payments of $430.00 per month on the wife's automobile loan;
 (b) the remaining three tuition payments of $2,400.00 per quarter, for a total of $7,200.00, in order for the wife to complete her doctoral studies.
3. The wife shall be entitled to all the personal property shown on defendant's exhibit B, except that the husband shall retain the treadmill as agreed to by the parties. The wife shall be responsible to remove the personal property at her own expense on or before February 1, 1994.
4. The husband shall continue to provide and pay for medical insurance coverage for the wife as made available to him by either of his union benefit plans for a maximum of three years, or upon the wife being able to obtain her insurance from future employment, whichever is sooner. The wife shall be responsible for one half of' any unreimbursed medical expenses. When the wife is able to obtain medical insurance from future employment, she shall so notify the husband and, at that time, his obligation shall terminate.
5. The parties shall be responsible to pay for their own attorney's fees. CT Page 10815
6. The court has considered the respective claims for relief relative to the federal tax liability of approximately $457,000.00 and will not act on either claim. Instead, the court will leave this issue to be decided by the IRS, the federal tax court or other federal authority. Each party shall be responsible for the remaining debts listed in his or her financial affidavit.
7. The wife may resume the use of her maiden name, Paula Franklin.
ROMEO G. PETRONI, JUDGE