[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband and the defendant wife were married on August 12, 1962 in Somerville, New Jersey. Their only two children, sons Jay and Jeffrey, are now twenty-nine and self-supporting.
The wife testified that the marriage was happy and stable until June 1989. Then the husband began constantly criticizing her and nothing she did pleased him. He became angry for no reason. She believed business reverses were causing this change in his behavior. In March 1990, without provocation, he slapped her across the face with his hand. After having promised she would stop smoking, in April 1990 she admitted having smoked a cigarette on occasion. For this admission, he immediately struck her with his fist. After these two unprovoked assaults, she lived in fear of him, and in June 1990, she moved out of the marital home.
The husband had actually been a stranger to her since June of 1989 even though she did not know of his relationship with a Ms. Christine Biagioni, who was an employee of STG-Connecticut in which he owned an equal 50 percent interest. In 1982, after a company picnic, Mr. Edwin Galog, his partner at STG-Connecticut, CT Page 3037 saw him kissing Ms. Biagioni in the parking lot of the office building they owned. When confronted by Mr. Galog, the husband admitted to being in love with Ms. Biagioni, a much younger woman.
When the husband filed this action for dissolution in September 1991, Ms. Biagioni and her two year old daughter moved into the marital home with him. When the husband moved to Florida permanently in July 1993, Ms. Biagioni and her daughter moved with him and now share the same home. These facts were undisputed by the husband.
From this evidence, the court finds that the marriage has broken down irretrievably with no prospect for reconciliation; therefore, a decree of dissolution may enter.
The court finds that the primary cause for the breakdown of this marriage was the husband's violent behavior and volatile temper which kept the wife in constant fear of him. She was justified in moving out of the home in June 1990. A contributing cause, which the wife did not know of in June 1990, was his long-standing, romantic relationship with Ms. Biagioni. The court can attribute no fault to the wife, and found her testimony credible and responsive.
Fault, however, is only one of the factors to be considered in making financial orders. In making awards of alimony under 46b-81, of assigning title to marital assets, the court must consider other factors such as the length of the marriage, the causes for the dissolution, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of the parties. The court must also consider their ability to acquire future capital assets and how much each contributed to the marital assets.
This a marriage of thirty-one years and six months. The husband is 55 years of age and the wife is 53 years of age. The wife has worked as a registered nurse for seventeen years presently earning a gross annual salary of $35,000. During this same period, the husband has been a successful sales-marketing executive earning between $55,000 to $71,000 a year from a company in which he owned a 50 percent interest. His earnings had been at least twice as much as hers. The husband currently lists no present income from employment on his financial affidavit because the company closed down in January, 1994. With his business experience and sales ability, he should regain his past earnings CT Page 3038 within a year. The wife lists her net weekly income from employment of $384.32, with total expenses of $811.82. Her total assets are listed at $160,529.74 and the husband's at $565,181.47 on their respective affidavits.
In her claims for relief, the wife requests a $1.00 per year lifetime alimony award. The husband makes no claim for alimony. Ordinarily, under these facts, the wife would be entitled to a substantial periodic monthly alimony award under46b-82 of the Connecticut General Statutes. However, the wife will accept the $1.00 nominal alimony because she requests title to a substantial part of his assets, which together with her earnings, should make her self-supporting as long as she is able to work. This nominal award would allow her to seek a modification of periodic alimony if she has a substantial change in circumstances. General Statutes 46b-86(a); Borkowski v. Borkowski, 228 Conn. 729, p. 734 (C.L.J. March 15, 1994).
As requested, the court awards the wife periodic alimony of $1.00 a year until the death of either party, the wife's remarriage or statutory cohabitation.
The court may assign to either party all or any part of a marital asset after considering all the criteria in 46b-81(c) of the Connecticut General Statutes. The division of property is to give each party what is fair and equitable. Rubin v. Rubin,204 Conn. 224, 228 (1987). The statutory criteria are similar to46b-82 but includes the ability and opportunity of each party to acquire capital assets in the future and the income and contribution of each party to the acquisition, preservation or appreciation in value of such assets.
In his claims for relief, the husband urges the court to order a sale of four parcels of real estate, in which he owns fractional interests with other stockholders or partners, and one parcel owned jointly with his wife. Since the parties cannot agree on fair market value, the husband believes this court should order a sale of all real estate. He suggested that this would be the fairest method to determine market value and the gains or losses of the real estate should be divided forty-five (45%) percent to the him and fifty-five (55%) percent to the wife. The same percentages should be applied to the subchapter S distribution of the husband's stock in STG-Connecticut and STG-Virginia. CT Page 3039
The husband and Edwin Galog formed STG-Connecticut in 1976 and worked closely as equal partners for the next seventeen years. It went out of business in December 1993. The real estate and stock holdings in STG-Connecticut are now subject to litigation between the husband and Edwin Galog, which could take years to resolve. The same problems could evolve with the other real estate and stock holdings the husband owns with other partners including STG-Virginia. The wife had minimal knowledge of the husband's business or real estate ventures, and she should not be subjected to delay or involvement that results from litigation or controversy with business partners.
The court finds it both equitable and practical for the husband to retain most of the stock and real estate that he holds with these other partners. His 50 percent interest in stock and real estate in STG-Connecticut, a subchapter S corporation, was his primary source of income for the past seventeen years. They both also owned an equal 21 1/4 percent stock interest in STG-Virginia, a subsidiary of STG-Connecticut. Mr. Galog testified that in December 1993 he sold his 21 1/4 interest in STG-Virginia to another stockholder, a Mr. Gosselin, for $150,000 pursuant to a stockholders agreement.
The court finds the husband's 21 1/4 percent interest in STG-Virginia is also presently worth $150,000.
In December 1993, the husband offered to buy out Mr. Galog's stock in STG-Connecticut for $30,000 but did not consummate it. Mr. Galog offered to pay $10,000 for the stock which Mr. Tibball refused. On December 29, 1993, they discussed dissolving the company because, in effect, it was no longer operating. Mr. Galog stated that the husband had depleted accounts, checks were missing and employee's paychecks were returned for insufficient funds. These issues are now the subject of a civil suit between these partners. The court found Mr. Galog's testimony credible and persuasive. On the other hand, the husband was evasive and unresponsive on cross-examination by the wife's attorney. During these proceedings, the wife's attorney needed court orders to obtain financial information and records. The husband held funds in over forty accounts which had to be subpoenaed. The husband demonstrated an ability to manipulate accounts between businesses and was able to maintain a comfortable lifestyle in spite of his serious financial difficulties.
The court will not order a sale of the four parcels of CT Page 3040 real estate which the husband owns with other partners nor order distribution of stock in the corporations in which other stockholders have equal or greater interests. There could be lawsuits to delay distribution of his stock. The delay and costs to complete partition sales would be detrimental to the wife. Therefore, the court will determine the fair market value of these assets from the financial affidavits, the exhibits in evidence and the testimony of the witnesses. Furthermore, the husband's financial affidavit has cash and liquid assets of approximately $393,000 (approximately 75 percent of his total assets) which can be distributed immediately. These listed assets include bank accounts totaling $30,134.87, stocks and bonds worth $70,398.35, deferred compensation plans valued at approximately $118,180.26, life insurance cash value of approximately $11,159.49 and $162,863 held in an escrow account by the wife's attorney from the sale of the jointly owned marital home.
The court has considered all the criteria in 46b-81, the assignment statute, 46b-82, the alimony statute and 46b-62, attorney's fees, as well as case law. The court has also reviewed and considered the testimony, the exhibits in evidence and the excellent legal briefs filed by both attorneys which have been a great assistance to the court in entering the following orders to transfer title of the husband's assets to the parties as follows:
 I
HUSBAND'S ASSETS
TO TO REAL ESTATE VALUE HUSBAND WIFE
139 Seaver Circle $120,000 0 $3,642 Bridgeport, Connecticut (as listed by (owned jointly with wife) both parties on financial affidavits)
288 Melody Lane $140,000 Fairfield, Connecticut (as listed on (owned solely by husband) husband's affidavit) Less Mortgage of $119,124 $20,876 CT Page 3041 Highland Avenue $140,000 Stratford, Connecticut (listed on (owned with Maturo and husband's husband 50%-50%) affidavit) $111,818 (1/2) interest) $14,091
Davis-Ford Road $222,000 Manassa, VA (Husband has 1/3 interest) $159,000 (1/3) $21,000
STG-Connecticut Office $600,000 883 Black Rock Turnpike $425,000 mtg. Fairfield, Connecticut $175,000 bal. (husband has 1/2 interest) 1/2 interest $87,500 --------------------------------------------------------------------------
B. CASH
Proceeds of sale of jointly $162,863 (25% $40,716 $122,147 owned marital home to husband, 75% to wife) --------------------------------------------------------------------------
C. MORTGAGES (2)
Robert Gosselin $15,500 $15,500 Maturo $10,000 $10,000 --------------------------------------------------------------------------
D. STOCKS IN SUBCHAPTER S CORP.
STG-Connecticut $10,000 $10,000 STG-Virginia $150,000 $150,000 STG-Florida $10,000 $10,000 --------------------------------------------------------------------------
E. MISCELLANEOUS
Classic Car Collection $45,000 (minus $8,000 for Audi for wife) $37,000 $8,000
Tools $1,750 $1,750 CT Page 3042 6 oz. of Gold $2,400 $2,400 --------------------------------------------------------------------------
F. BROKERAGE ACCOUNTS
A. G. Edwards (held $44,777 (75% jointly with wife) wife/25% husband) $11,170 $33,607
A. G. Edwards (held $18,320 (75% solely by husband) wife/25% husband $4,580 $13,740 --------------------------------------------------------------------------
G. BANK ACCOUNTS
First Union Savings Acct. $20,040 (75% wife/25% husband $5,010 $15,030
First Union Checking $1,185 $1,185
Shawmut I, II III $8,909 $8,909 --------------------------------------------------------------------------
H. STOCKS BONDS
Connecticut Bonds $7,300 $7,300
Miscellaneous Stock $300 $300 --------------------------------------------------------------------------
I. LIFE INSURANCE
Cash Value $11,159 $11,159 --------------------------------------------------------------------------
J. TAX DEFERRED ASSETS
IRA Line/Vanguard/Mfg. $118,180.26 (25% husband/75% wife) $29,545 $88,635. $59,090. -------------------------------------------------------------------------- CT Page 3043
The court has considered but did not accept the argument of the attorney for the wife that values of bank and checking accounts should be based on the amounts vested on August 19, 1993, the date of a court order freezing said assets (Bassick, J.). The court applied the current values listed in the husband's financial affidavit.
The court intends that the transfer of assets to the wife under these orders constitute lump sum alimony for her maintenance and support and are non-dischargeable in bankruptcy.
2. Alimony: Periodic alimony of $1.00 per year to the wife until the death of either party, the wife's remarriage or statutory cohabitation.
3. Tax Indemnification: The court incorporates herein by reference the 1992 Tax Indemnification and Refund Agreement signed by the parties, and it further orders each party to indemnify and hold the other harmless for any and all additional tax, interest, and penalties which may be due on joint returns filed during the marriage to the extent that they arise out of that party's income.
4. Personal/Household Property: Personal/household property shall remain as previously divided by the parties. In addition, the husband shall assign title to the 1988 Audi, mentioned above, to the wife.
5. Counsel Fees: The husband is to contribute the sum of $10,000 towards the payment of the wife's attorneys fees of $35,856.38, which the court finds fair and reasonable for the time required to litigate this case. The court finds that this $10,000 contribution towards the wife's attorneys fees provides for a more equitable distribution of the marital assets and does not undermine these financial orders and is made after considering all the criteria in 46b-62 of the General Statutes. Emanuelson v. Emanuelson, 26 Conn. App. 527, 532-534 (1992).
6. Debts: Each party is to assume the debts as listed on their respective financial affidavits.
7. Miscellaneous Assets: The wife shall retain all title and interest in the following assets as listed on her financial affidavit: (a) all bank accounts valued at $23,447; (b) Tax CT Page 3044 Deferred Assets, Pension and Retirement Plans valued at $51,510.
8. QUALIFIED DOMESTIC RELATIONS ORDER: The wife's attorney shall prepare a Qualified Domestic Relations Order (QDRO) to implement the 75 percent interest assigned to the wife of the husband's tax deferred assets, shown on the husband's affidavit as $118,180.26 and $127,151.50 in the wife's proposed distribution. The actual value of these assets are to be divided 75 percent to the wife and 25 percent to the husband as of the date of this order.
Judgment shall enter in accordance with the foregoing orders.
ROMEO G. PETRONI, JUDGE