[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant (hereinafter the wife) proceeded on her cross-complaint against the plaintiff (hereinafter the husband) to dissolve their marriage which took place in Mamaroneck, New York on October 2, 1972. The husband who had initiated the action by his complaint returnable on July 27, 1993, and attempted to withdraw it March 24, 1995, which the court denied by a decision dated April 12, 1995 (Petroni, J.).
Both parties have lived in this state for more than one year prior to filing the complaint and cross-complaint. Both parties alleged the marriage has broken down irretrievable. There are no children issue of this marriage, and neither party has received public assistance. The court has personal jurisdiction of the parties. It proceeded to trial on May 12th and 15th, 1995, at which time both parties were represented by counsel and testified on their own behalf.
The wife testified the husband had an extra-marital affair which contributed to the breakdown of the marriage. The evidence failed to prove the charge, and the court finds neither party at fault. A decree of dissolution is entered on the ground of irretrievable breakdown pursuant to § 46b-40(c) of the Connecticut General Statutes.
Some of the background facts are undisputed. The wife, who is now 53 years of age, has been receiving disability benefits from IBM, her former employer, since July, 1985 as well as total disability benefits from Social Security. She has been unemployed since 1985 and suffers from a lung disorder known as Sarcoidosis. This disease has caused additional medical complications including fainting spells, angina, and severe breathing problems which have become progressively worse over the past ten years. Her primary physician, Dr. Arthur P. Heliotis, believes she is disabled and unable to work and will need home health aides to be with her after the dissolution is final and the husband is no longer available to care for her. (See deposition transcript, plaintiff's exhibit A.)
During the past ten years, the husband has been attentive to the wife's medical and physical needs. He has been committed to caring for her in the marital home, did most of the cooking, cleaning and maintenance, takes her out to dinner at least once a week, goes on vacations with her, and as recently as two weeks ago, has gone to Foxwood Casino. He takes her to medical appointments, to play the slot machines and to dinner. Several years ago, he purchased a recreation vehicle to take her on vacation. In 1994, he drove her three times to the Lahey Clinic in Burlington, Minnesota to find out the cause of her CT Page 4990 Sarcoidosis illness. Dr. John Beamis, a medical expert, examined her at the Lahey Clinic on three separate occasions and forwarded his report dated November 14, 1994 to Dr. Heliotis. The husband had previously forwarded laboratory reports on her condition to Dr. Beamis to review.
Dr. Beamis' report (plaintiff's exhibit F) states that there no particular abnormality to explain all the wife's symptoms. He further states, "She certainly has been chronically ill due to her sarcoidosis and her personal problems. I hope I was able to convince her that she should be able to return to her baseline state eventually." There was no evidence that the husband was responsible in any way for her (Sarcoidosis) lung disease or her numerous other medical illnesses. In fact, the husband demonstrated his commitment to help her overcome or improve them. There was some evidence that the wife's seizures were psychogenically caused and were by her own induction, and with psychotherapy, would have had less frequent fainting spells (Norwalk Hospital records, plaintiff's exhibit H). Her being overweight may have been a contributing cause to her condition.
The husband is 59 years old and is also being treated by Dr. Heliotis for high blood pressure and ulcers but has been able to work regular hours as a design engineer for the past 28 years. He presently earns about $52,000 annually. His current financial affidavit shows gross weekly earnings of $1,046. The court finds his net weekly income to be about $812. He lists expenses of $850.91 a month, cash assets totalling $188,244.50 and liabilities of $20,780.21.
The wife's financial affidavit lists disability income from IBM of $219.63 and Social Security disability of $244.18 for a total net weekly income of $463.81. Her expenses are listed at $2,351.30 a week with an estimated weekly expense of $1,568 for nurses aides after the dissolution is granted and her husband is unavailable to care for her. Her assets are listed at $246,229.37.
The court must decide on a fair and equitable division of assets under § 46b-81 of the General Statutes and a fair award of periodic alimony under § 46b-82 of the General Statutes. The court finds that the parties' assets were all acquired during this twenty-three year marriage. The marital property consists of a marital home in Norwalk a total equity of about $256,000, a condominium in St. Augustine, Florida with equity of $26,500, an IRA of $18,200 and a 401K of $22,100 in the husband's name only. The wife also lists bank accounts totalling $7,129.37 and IBM stock valued at $3,600 in her affidavit.
The court has considered all of the statutory factors in §§ 46b-81
CT Page 4991 and 46b-82 including the length of the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability and the estate and needs of each party. Under § 46b-81, the additional factor of each party's ability to acquire future capital assets must be considered. No one factor is controlling. Valente v.Valente, 180 Conn. 528, 530 (1980). The division or assignment of marital assets must be fair and equitable. Rubin v. Rubin, 204 Conn. 224,228 (1987). The primary purpose of alimony is to continue to support a spouse and is not to punish either party. Tobey v. Tobey,165 Conn. 742, 748 (1974).
In their claims for relief, both attorneys agree that this twenty-three year marriage warrants a lifetime alimony award. The court has considered the wife's disabilities and illnesses in making these monetary awards as well as the other statutory factors.
In her claims for relief, the wife requests 100 percent of the equity from the sale of the real estate as well as the husband's entire 401K and IRA funds totalling $40,300 and an alimony award of $450 per week. The husband's claims for relief request an equal division of the real estate and periodic alimony of $110 per week.
Based on all the testimony and evidence, the statutory criteria of §§ 46b-81, 46b-82 and 46b-62, the case law, the financial affidavits and the claims for relief, the court enters the following orders:
1. REAL ESTATE
 The family home at 42 Douglas Drive, Norwalk, Connecticut and the condominium in St. Augustine, Florida shall be listed for sale immediately at fair market value and the net proceeds divided sixty (60%) percent to the wife and forty (40%) percent to the husband. The net proceeds are defined as the purchase price less payment of mortgage debt, brokers' fees, conveyance taxes and other normal closing costs. The court shall retain jurisdiction as to any dispute which may arise relative to these sales.
2. ALIMONY
 The husband shall pay the wife periodic alimony of $200 per week until the wife's death, remarriage or statutory cohabitation pursuant to § 46b-84(b) of the Connecticut General Statutes or upon the husband's death. The award more than equalizes their present net weekly income in the wife's favor. CT Page 4992
3. DEBTS
 The parties shall be equally liable for the debts listed on the wife's financial affidavit.
4. PENSION AND RETIREMENT PLANS
 The husband shall retain his 401K plan valued at $22,100 and his IRA valued at $18,200 shall be the wife's property. The husband shall sign any documents necessary to transfer the IRA to the wife.
5. BANK ACCOUNTS, STOCKS, BONDS AND MUTUAL FUNDS
 The wife shall retain the bank accounts valued in her financial affidavit at $7,129.37 and the IBM stock valued at $3,600.
6. AUTOMOBILES
 The husband shall retain ownership of the 1983 Eldorado, the 1984 Eldorado and the 1983 Rockwood RV and shall be solely liable for any debts owed on these vehicles.
7. LIFE INSURANCE
 The husband shall maintain the wife as irrevocable beneficiary on his present life insurance policies now in effect for as long as he is obligated to pay alimony.
8. PERSONAL PROPERTY
 The parties shall divide the household furniture and furnishings equitably. If they cannot agree, they shall go for mediation with Family Relations. If mediation fails, the court shall decide this issue.
9. MEDICAL INSURANCE
 The husband shall maintain the wife on his health insurance policy provided for by his employer and pay the premium for the wife's benefits for three (3) years.
10. ATTORNEY'S FEES
Each party shall be responsible to pay his or her own attorney's CT Page 4993 fees.
ROMEO G. PETRONI, JUDGE