[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] AMENDED MEMORANDUM OF DECISION
This is a limited contested dissolution of marriage commenced in August 2001. The defendant filed an answer and cross complaint. The plaintiff was pro-se and the defendant was represented by counsel at trial.
 Jurisdictional Findings
1. The plaintiff and the defendant, whose birth name was Laurie A. Kraus, intermarried on May 19, 2000 at Manchester, Connecticut.
2. Both parties have lived in the state of Connecticut for at least twelve months before the filing of this action.
3. The marriage between the parties has broken down irretrievably and there is no reasonable prospect of reconciliation.
 4. There are no children issue of the parties to this action.
5. The Court has jurisdiction of this matter.
 Applicable Law
Connecticut General Statutes § 46b-81 sets forth the considerations to be used in determining the equitable distribution of marital assets. Those considerations include the length of the marriage, the cause for the dissolution, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates. "Contribution" includes nonmonetary as well as monetary contributions and includes homemaking and primary caretaking responsibilities. O'Neill v. O'Neill,13 Conn. App. 300, 311-12 (1988). CT Page 1664
In entering its property orders, the Court shall take into consideration all of the criteria set forth in § 46b-81, but is not required to make express findings on each of the criteria, Weiman v.Weiman, 188 Conn. 232, 234 (1982), nor is it required to give equal weight to each of the specified criteria and no single criteria is preferred over the other. The Court has wide latitude in weighing each criteria under the individual circumstances of each case. Collucci v.Collucci, 33 Conn. App. 536, 539 (1994). The Court's charge is to distribute, as equitably as possible, the marital assets of the parties.Rubin v. Rubin, 204 Conn. 224, 228 (1987). Similar provisions apply to alimony awards, see § 46b-82, of the general statutes.
 Discussion
This is a short-term marriage marked by a couple of separations and reconciliations. The parties, each of whom has a child or children from prior relationships, lived together for a time before they married. The husband's health insurance had ended and they married primarily in order that he could become insured on the wife's medical plan through her employer.
At the time of the marriage the wife worked in the data support office of Aetna Insurance Company. She continues in that employment. Her gross earnings are $656 weekly and $421 net. She also received child support for a minor daughter which was put into a joint household account with her earnings. There is presently an arrearage owing to her for previous child support.
At the time of the marriage the husband was not working. He had been working as an underwriter for Aetna Insurance under a contract which expired in January 1999. In December 2000, he fulfilled his dream and obtained a Blimpie's franchise. He is a 75% owner and his wife a 25% owner of that business. He runs the business. The wife signed on as an accommodation to obtain the necessary financing but takes no part in its running or management.
Each party blames the other for the breakdown of the marriage.
The wife claims that the husband was controlling especially as to finances, that he subjected her to various humiliating sexual perversions, and would call her belittling names.
On the other hand the husband claims she is an alcoholic and had at least one affair during the marriage. She admits going to AA meetings CT Page 1665 within the past couple of years but denied being an alcoholic or driving while intoxicated and also claims that the husband encouraged her to drink. She denies having any extra-marital affairs prior to their separation.
This Court believes both of the parties were contentious and argumentative, that there was enough incivility on both sides which made their relationship intolerable. Their marriage was characterized by offensive, cruel name calling and perverted sexual practices.
While the relationship between the parties was probably much as it was when they lived together pre-marriage and after the marriage, it appears that neither was substantially more at fault for the destruction of the relationship than the other.
 Orders Dissolution: The Court finds the marriage has broken down irretrievably. Judgment shall enter dissolving the marriage on said grounds.
Alimony: Plaintiff shall pay alimony in the amount of $1.00 per year for as long as the defendant has any financial liability for LJC Ventures, LLC a/k/a Blimpie Subs Salads, and as long as she has any other financial liability for any other financial obligations ordered against the plaintiff in this judgment, including any financial liability caused by bankruptcy of the plaintiff.
"Blimpies Subs Salads": The defendant shall transfer her interest in said business and execute any documents to effectuate said transfer. Any financial obligations of "Blimpies" shall be the plaintiff's responsibility and he shall hold the defendant harmless therefrom.
Automobiles: The defendant shall retain the 1998 Dodge Caravan and shall be responsible for any debt, or costs in connection with said vehicle.
The plaintiff shall retain the 1996 Ford Contour, the 1998 Nissan, the 1992 Volkswagen and the Honda Motorcycle and shall be responsible for any debt or costs in connection with said vehicles.
Personal Property: The parties shall retain any personal property in their respective possession.
Debts: The parties shall be responsible for the debts shown on their CT Page 1666 respective financial affidavits, however, the plaintiff shall be responsible for the ATT Master Card debt in the approximate amount of $10,500.
Medical Bills: The parties stipulated that the defendant is entitled to be reimbursed for medical bills she paid on behalf of the plaintiff or his daughter. The stipulated amount is $748 however, the plaintiff is entitled to a credit for any of the bills included in the $748 amount which he has already paid. Said $748 less any credits for bills paid shall be paid within thirty days of this decision.
Property Settlement: By way of property settlement the plaintiff shall pay the defendant the sum of $7500 within thirty days of this decision.
The Court does not accept the truthfulness of the plaintiff's financial affidavit which indicates he receives no income from his "Blimpies" store. He testified (without corroborating evaluation evidence) that the business has a market value of approximately $100,000 but with a net value of $10,000. He also testified that he had a 401(K) plan at the time of his marriage valued at $150,000 which is now worth $40,000, and that he withdrew from that account for normal living expenses. Yet, illogically, he bought a motorcycle in May 2001 which he values at $2,400 and in May 2002, he vacationed in Myrtle Beach (which he claims was a gift from his children), but which this Court finds is inconsistent for one who has zero income.
Attorneys Fees: Each party shall be responsible for his or her own legal fees.
401(K) Plans: Each party shall retain his or her own 401(K) plan.
Other: The defendant's birth name of Laurie A. Kraus is ordered restored to her.
Motion for Contempt: The defendant filed a Motion for Contempt which was argued at the time of trial. The substance of the claim was that the plaintiff was late in answering discovery, failed to produce some documents requested and answered at least two questions with profanities.
The Court does not find the plaintiff to be in contempt of a court order although he was totally inappropriate.
"COBRA Health Insurance": The plaintiff shall be entitled to obtain health insurance pursuant to COBRA provisions for which he may be eligible, however he shall be responsible to pay any premiums or costs for such insurance coverage.
Klaczak, JTR CT Page 1667
[EDITORS' NOTE: This page is blank.] CT Page 1668