[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff husband, 37, and the defendant wife, 37, whose birth name is Lenihan, married on July 18, 1987 in New Canaan, Connecticut. For jurisdiction the court finds that the defendant has been a resident of Connecticut continuously for over one year next preceding the date of the filing of the complaint, §46b-44(c). One child has been born issue of the marriage, Shannon Marie d.o.b. May 26, 1995. The parties have agreed to joint legal custody with primary physical custody to be with the defendant by stipulation (#144) of February 11, 1998, § 46b-56a(a). The court accepted the stipulation.
The plaintiff attended Boston University for one year. He then moved to Los Angeles, California in 1980 where he worked for a telephone company until 1989. During this time his earnings peak was below $60,000 as a telephone installer.
When married, the plaintiff had an undivided one-third interest in a condominium unit purchased with his parents in April, 1985 (Defendant's Exhibit C) for $122,000, (Defendant's Exhibit E) subject to a mortgage in the principal amount of $98,000 (Defendant's Exhibit D). The plaintiff occupied the unit from the time of the purchase and the parties continued to occupy it for about one year after the marriage. The claim by the plaintiff and his father that the plaintiff put no money into the purchase does not affect the plaintiff's ownership interest. The parties stipulated that the current fair market value of the unit is $146,500 and the mortgage balance is $82,200. Although now rented it has a negative cash flow. The plaintiff also brought $40,000 in debts to the marriage. The defendant assumed management of the family budget about three months after the marriage and she managed the parties' finances.
When married, the defendant, a college graduate, was employed in securities sales licensed by the S.E.C. Since September 1987 until the present time, the defendant has been employed by Dean Witter. Since 1995 the defendant has been a certified financial planner and is associate vice president. Her compensation is derived from commissions and fees.
The parties moved to New York City when the defendant transferred to her employer's office located there. The parties moved into an apartment owned by the defendant's parents. The parties paid rent and utilities. The defendant claims the rent was discounted and she states a debt to her father of $18,800. CT Page 6932 The court finds no credible evidence in the record to support this claim.
The plaintiff secured employment with a telephone company at $16 hourly wage. After three years the plaintiff became employed by Nortel a/k/a Wiltel Company LTC in a job described as "tech II". He is a member of the Communication Workers of America Union. He has a pension (Defendant's Exhibit T). For the past two years he has been a software programmer.
He is in general good health except for pain in his hips which periodically occurs. The plaintiff used crutches for five or six months and now uses a cane. He finds it difficult to stand for long periods of time. The condition does not impair his earning ability. The defendant is in good health.
The parties purchased a condominium unit known as Unit 2, 78 Seminary Street, New Canaan, Connecticut in June, 1993 for $255,000. The parties have stipulated that the fair market value is now $355,000 and the mortgage balance is $198,000. It is currently rented at $2,400 monthly rent, covering the mortgage installment of $1,800 and common charges of $175. The defendant has been retaining the excess for application on an arrears in the mortgage (Defendant's Exhibit JJ) that occurred when the unit remained vacant and no one paid the mortgage. The defendant lists the arrears as $1,808.03 on the mortgage and $525 arrears on the common charges on her April 15, 1998 financial affidavit. The mortgagee requested and the plaintiff's parents submitted a letter to the New Canaan Bank and Trust Co. stating they were giving $30,000 to plaintiff and defendant. "It is not a loan and no repayment is expected." (Defendant's Exhibit A).
When the plaintiff left his California employer he had a 401K rollover account into an IRA. He has made no additions to the account which he lists as containing $40,913 on his April 8, 1998 financial affidavit (#144). He has a 401K savings plan with his present employer valued on the affidavit at $3,052. The plaintiff has a joint account with his mother at Dean Witter containing $11,813. His union pension, which is assigned no value, is calculated at $38 times years of service. He has term life insurance in the face amount of $162,416.
The plaintiff claims to owe his father $35,000 for legal fees advanced and for $1,000 monthly that the father has been giving him while this suit is being prosecuted. CT Page 6933
The plaintiff's monthly stipend has been paid during the pendency of this action. The court has no way of determining when or if the plaintiff's father will terminate payments. The court must deal with the present set of circumstances. In doing so it concludes that the plaintiff's monthly stipend is not income for a child support determination. Schmidt v. Schmidt,180 Conn. 184, 187 cited with approval in Rubin v. Rubin, 204 Conn. 224,239.
His current gross weekly income is $994 and, after mandatory deductions, is $741 net weekly.
The defendant's assets consist of a 50% interest in the New Canaan condominium unit, a 1997 Ford Escort automobile valued at $7,000, U.S. Savings Bonds valued by the defendant at $4,100 owned jointly with the plaintiff, bank accounts totaling $438 and her Dean Witter retirement account valued at $178,112.
The plaintiff had gross wages of $70,980 in 1993 while the defendant's gross was $70,696 (Plaintiff's Exhibit #4). In 1995 the plaintiff's gross wages were $53,555 while the defendant's gross was $44,714 (Plaintiff's Exhibit #6). In 1996 the plaintiff's gross wages were $54,793 (Plaintiff's Exhibit #7). The plaintiff's income for 1996 was $56,782 (Defendant's Exhibit #1). In 1997 the plaintiff's gross wages were $51,514 (Plaintiff's Exhibit #8) while the defendant's gross was $83,375 (Defendant's Exhibit Y). The court sets out these earnings of each party to demonstrate that their past earnings have not been grossly disproportionate. The defendant's claim for substantial periodic alimony is found to be unsubstantiated and unwarranted. The court will keep the alimony door open with a nominal order for a period of time.
The child support guidelines are applied to determine the proper order. A worksheet prepared by the defendant is accepted as the appropriate calculation and is adopted by the court, a court being annexed hereto.
The causes of the marriage break down are in dispute. The plaintiff testified that the opportunity for coitus became greater reduced after the arrival of their child. He also attributed the defendant's lack of interaction with his mother at Nag's Head in late 1995 as an additional reason. The court finds this reason to be frivolous. He further claimed the defendant had no interest in decorating their home. The court notes that the CT Page 6934 plaintiff was working nights while the defendant worked days.
The plaintiff moved from the family home in early February, 1996 after advising the defendant, on Christmas Eve, that the marriage was not working. The court notes that the plaintiff had several complaints about the defendant but little to say about any effort he made to save the marriage. He now has a girlfriend that he first met in 1993 in his workplace. In February, 1996 they spent an overnight at a bed and breakfast. He has bought several presents for her. The court infers that the plaintiff initiated this affaire du coeur and such action was the major contributing cause to the failure of the marriage.
The plaintiff moved to an apartment in Manhattan and several months later the defendant moved from New Canaan to a Manhattan apartment. The child is in day care in midtown Manhattan.
Although there have been several occurrences of friction between the parties, there is no question that the plaintiff has been diligent in exercising his visitation with the child. The court will order visitation utilizing the plaintiff's request.
The defendant has asked the court to restore her birth name and to alter the child's last name. The court's jurisdiction is provided by § 46b-63 and is limited to "either spouse."
The court has reviewed the evidence, has considered all the elements of § 46b-81 and § 46b-82, has evaluated the credibility of the witnesses, has considered the arguments of counsel and the claims for relief in reaching the follow decree.
The court enters judgment dissolving the marriage on the ground alleged in the complaint and, as part of the judgment, enters the following orders.
1. The parties are awarded joint legal custody with physical custody with the mother and visitation given to the father as follows:
 a) the plaintiff shall visit with the child from Friday at 5:00 p. m. to Sunday at 7:30 p. m. on every other weekend;
 b) the plaintiff shall visit with the child on Tuesday and Thursday from 5:00 p. m. to 7:30 p. m. in each week preceding no weekend visitation by him; CT Page 6935
 c) the plaintiff shall visit with the child on Tuesday and Wednesday from 5:00 p. m. to 7:30 p. m. in each week preceding his weekend visitation;
 d) the parties will alternate Thanksgiving and Christmas holidays and each will have a reasonable time period to spend with the child on her birthday;
 e) during the summer each party shall have two consecutive weeks of vacation with the child and designation of weeks shall be given the other party 60 day advance;
f) this is a modifiable schedule of visitation.
2. The plaintiff shall pay the defendant the sum of $150 weekly child support and a contingent wage withholding order is entered, worksheet appended hereto.
3. The plaintiff shall provide and pay for health insurance for the minor child, including dental coverage. The parties shall be equally responsible for any deductible or unreimbursed bill balance. Section 46b-84(d) applies to this order.
4. The plaintiff is ordered to name the child as primary irrevocable beneficiary on his existing life insurance listed as having a death benefit of $162,416 so long as he is liable for child support. He shall obtain additional coverage on his life in the amount of $150,000 death benefit naming the child as primary beneficiary irrevocable for so long as he is liable for child support. He shall provide the defendant with proof of coverage when same is obtained and thereafter annually on each policy's anniversary date.
5. The real estate known as 78 Seminary Street, New Canaan is ordered sold and the net proceeds are ordered divided between the parties in equal shares. Any enforcement of this order may be had by further court order. Roberts v. Roberts, 32 Conn. App. 465.
The defendant shall continue to collect the rent, pay the monthly charges and apply the balance to arrears with a final accounting to be made at the closing with any remaining deficits to be paid from the proceeds of the sale charged equally to each party. CT Page 6936
6. The plaintiff shall retain his interest in the California condo unit owned joint with his parents, as his sole property.
7. The Dean Witter account standing in the name of the plaintiff and his mother, Virginia Burke, shall be free of any claim by the defendant.
8. The plaintiff shall retain his IRA Dean Witter account, his 401K savings plan — Nortel and his CWA union pension from which pension the defendant shall release all her rights in same.
9. The defendant shall retain her retirement account as her sole property free of any claims of the plaintiff.
10. The parties shall divide the U.S. Savings Bonds equally.
11. The plaintiff shall retain any other assets not ordered above, either standing in his name or in his possession, as his sole property.
12. The defendant shall retain her auto and any other assets not ordered above, either standing in her name or in her possession as her sole property.
13. Each party shall be solely responsible for the debts each has incurred including the expenses of this litigation.
14. The party enjoying physical custody of the child pursuant to court order shall give the other party at least 90 days prior notice of any planned relocation resulting in moving the minor child from Manhattan.
15. The plaintiff shall pay the defendant $1 per year periodic alimony until the defendant's remarriage, the death of either party, future court order or July 1, 2008 with said term limitation being non-modifiable. Section 46b-86(b) applies to this order.
16. The defendant's birth name of Lenihan is restored to her.
Counsel for the plaintiff is directed to draft the judgment file.
HARRIGAN, J.
CT Page 6937
APPENDIX A
 CONNECTICUT CHILD SUPPORT AND ARREARAGE GUIDELINES WORKSHEET A — Page 1
JANEMARIE LENIHAN BURKE PATRICK BURKE JANEMARIE LENIHAN BURKE
MOTHER FATHER NAME OF CUSTODIAN
COURT STAMFORD D.N./CASE NO. FA 96-0153966 NUMBER OF CHILDREN ONE
CHILD'S NAME DATE OF BIRTH CHILD'S NAME DATE OF BIRTHSHANNON MAY 26, 1995 ____________ _____________ ___________ _____________ ____________ _____________ ___________ _____________ ____________ _____________
 I. Net Income Computation (Weekly amounts) MOTHER FATHER
1. Gross income (attach verification) $1,186.86 $ 994.00
2. Number of exemptions for tax purposes ________ _______
3. Federal income tax $ 215.75 $ 164.00
4. State and local income tax $ 59.28 $ ______
5. Social security tax or mandatory retirement group term ss medicare $ 68.97 $ 67.00
6. Health insurance premiums (other than child) $ 73.00 $ 8.00
7. Union dues or fees $ _______ $ 13.00
8. Unreimbursed work related day care Dependant Care $ 104.17 $ ______
9. Other New Long mandated disability $ 4.46 $ ______
10. Sum of lines 3 — 9 $ _______ $ ______
11. Net income (line 1 minus line 10) $ 661.23 $ 742.00
II. Current Support Determination
12. Combined net weekly income (nearest $10.00) $1,403.23 CT Page 6938
13. Basic obligation (from schedule) $ 278.00
14. Check here if noncustodial parent is a low-income obligor (see instructions) ---------
15. Child's health insurance premium $ _______ $ _______
16. Total obligation (Line 13 minus noncustodial parent's line 15 amount if line 14 is checked; line 13 plus line 15 total for all other cases) $ 278.00
17. Each parent's decimal share of line 12 (If line 14 is checked, skip this line and line 19, and enter the line 16 amount in the noncustodial parent's column on line 18.) 47% 53%
18. Each parent's share of the total obligation (Line 17 times line 16 for each parent) $130.66 $147.34
19. Health insurance premium adjustment $ _____ $ _____
20. Social security benefits adjustment $ _____ $ _____
21. Sum of lines 19 and 20 (for each parent) $ _____ $ _____
22. Recommended support amounts (Line 18 minus line 21) $ _____ $ _____
23. Current support order (Noncustodial parent(s) only. If different from line 22 amount, explain in section VI.) $ _____ $ _____ GO TO THE NEXT PAGE
 CONNECTICUT CHILD SUPPORT AND ARREARAGE GUIDELINES WORKSHEET A — Page 2 III. Total Arrearage Determination
24. Delinquencies on current support orders $ ________
25. Unpaid court-ordered arrearages $ ________
26. Past-due support (not court-ordered) $ ________ CT Page 6939
27. Total arrearage (sum of lines 24 through 26) $ ________
IV. Arrearage Payment Determination
28. Current support order from line 23 (or imputed support obligation for IV-D arrearages owed to the state or if child living with obligor) $ ________
29. Twenty percent (20%) of line 28 (or fifty percent (50%) of line 28 if there is no child under age 18) $ _________
30. Noncustodial parent's line 11 amount $ _________
31. Fifty-five percent (55%) of line 30 $ _________
32. Line 31 minus line 28 $ _________
33. Line 28 plus $145 $ _________
34. Line 30 minus line 33 $ _________
35. Recommended arrearage payment $ _________
 (Smallest of lines 29, 32, and 34; or $5.00/month if child living with obligor and obligor's gross income is not more than 250% of poverty level; or the lesser of $5.00/week or line 34 for low-income obligor. If arrearages are owed to the state and the family, $5.00/month of this amount is allocated to the state, and the balance to the family.)
36. Arrearage payment order (At least $5.00/month unless line 34 is less than $1.00. If different from line 35, explain in section VI.) $ _________
 V. Order Summary
37. Current support order $ __________
38. Arrearage payment order $ ________ $ ________ to state to family
39. Total arrearage $ ________ $ ________ to state to family
CT Page 6940
40. Total weekly support order (Line 37 plus line 38 total) $ _________
 VI. Deviation Criteria Applied
41. Reasons for deviation from current support and/or arrearage guidelines: 1. Other financial resources are available to Tim Burke (Plaintiff), See, Rubin v. Rubin, 204 Conn. 224 (1987), the Court can consider the fact that Plaintiff receives $1,000.00 a month from his parents and has received contributions throughout the marriage. 2. JaneMarie Burke has day care expenses she must pay so that she can work. 3. JaneMarie Burke also has job related expenses that are unreimbursed.
Prepared by Title Date