[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has filed for a dissolution of her marriage with the defendant. Based upon the evidence presented at a contested hearing in this matter, the court makes the following findings.
The plaintiff and the defendant were married on June 9, 1984 in Orange, Connecticut. Two children have been born to the parties who are issue of their marriage, Halle, age 4, and Molly, who will soon be two years old.
On June 12, 2001, the parties reached an agreement which was approved by the court with respect to custody and visitation. Pursuant to that agreement, the parties were awarded joint legal custody of the minor children, primary residence with the plaintiff. The parties also agreed to a parenting plan that provides the defendant with midweek, weekend, holiday and vacation visitation with both children.
The plaintiff is thirty-six years old and in good health. She earned a bachelor of science degree, with a concentration in accounting, at Southern Connecticut State University in 1986. She is a certified public accountant, having acquired her certification in 1992, and licensed to practice in Connecticut. Since 1995, the plaintiff has operated her own accounting service. She specializes in establishing and maintaining computerized accounting systems. Prior to opening her own business, the plaintiff was employed by two different accounting firms as an accountant. She has been employed in various capacities as an accountant since 1986.
The income that the plaintiff receives from her accounting business is modest. In 1998, the parties' income tax return indicates the plaintiff's business had net income of $5,640 based on gross receipts of $19,746 and in 1999, the last year for which an income tax return has been filed, the plaintiff had gross receipts from her business in the amount of $26,806, CT Page 14082 with a resulting profit of $11,180.
The defendant is forty-seven years old and in good health. He received a bachelor of science degree from Davidson College and has been a certified public accountant since 1985. He is presently a senior manager with the accounting firm of Weinstein Anastasio, P.C. The defendant earns a gross income of $95,500 annually which results in a net weekly income of $1,243. The defendant's employer also pays his annual membership dues at the Pine Orchard Country Club and reimburses him for mileage expenses. These perquisites average $164 weekly as reflected on the defendant's financial affidavit.[1]
The parties jointly own the marital home at 25 Pepperwood Lane in Branford, Connecticut. The property has a present fair market value of $250,000. It is encumbered by a mortgage of $88,663 and has a net equity of $161,337. In 1999, the defendant used $50,000 that he received in life insurance proceeds due to the death of his father to pay for an addition to the marital home.
The defendant also owns a condominium at 182 Shagbark Drive in Derby, Connecticut. It was purchased by the defendant approximately six years ago with funds that he received from his parents. The condominium was purchased by the defendant to provide a summer residence for his parents who resided in Florida. Although the property is currently rented, its expenses exceed its rental income. The current fair market value of the property is $82,000. The property is encumbered by a mortgage with a principal balance of approximately $60,000, resulting in a net equity of $22,000.
The plaintiff possesses three IRA's with a total value of $25,478. The defendant owns two IRA's and he possesses a 401K plan which have a total value of approximately $34,600. The parties jointly own 5-6 limited edition prints worth an estimated $30,000.
Each of the parties claims that the other is primarily at fault for the breakdown of the p marriage. The plaintiff contends that their marriage deteriorated due to a lack of communication, attention and communication by the defendant that began in 1991. She asserts that she made efforts to address the problems, including discussions with the defendant and marriage counseling. According to the plaintiff, the defendant's behavior did not change so the plaintiff decided to terminate the marriage in October 2000. The defendant claims that the parties' marriage collapsed due to the plaintiff's extramarital affairs, particularly her current relationship with George Cahill. The court finds, based on the evidence presented, that the plaintiff is at fault for the breakdown of the marriage. CT Page 14083
The plaintiff engaged in three extramarital relationships during the parties' marriage. The plaintiff had a sexual relationship which lasted approximately six months with David Gamberdella in the early 1990's. She had another sexual relationship of two years duration with Dennis Sciancelepore in 1995 and 1996. The plaintiff became sexually intimate with George Cahill beginning no later than March 2000. This intimate liaison continues to this day and was the precipitating factor in the parties' divorce. Although the parties' relationship may have been less than idyllic, their marital difficulties were transformed into an irretrievable breakdown due to the actions of the plaintiff
The parties also vigorously disputed at trial the issue of the plaintiff's earning capacity. The plaintiff asserts that there has not been an adequate showing that she could obtain more lucrative employment with an accounting firm. She also contends that her obligation to transport her oldest child, Halle, from nursery school to day care in the middle of the day prevents her from working full-time with an accounting firm. The defendant produced at trial two expert witnesses, Curt Audibert, a corporate recruiter in accounting and finance and Mark Harrison, a certified public accountant and attorney, who testified as to the plaintiff's earning capacity. The defendant also insists that alternative arrangements for Halle can be made that would eliminate the plaintiff's need to provide transportation.
A court in a dissolution proceeding may base financial awards on the earning capacity rather than the actual earned income of the parties.Miller v. Miller, 181 Conn. 610, 611-12 (1980). Based on the evidence presented, it is appropriate in this case that the court impute an earning capacity to the plaintiff. The plaintiff is a certified public accountant with fifteen years experience as an accountant. In the recent past, she worked at a private accounting firm. In 1995, the plaintiff and the defendant, hoping to start a family, agreed that the plaintiff should open her own business in an effort to provide her with the increased flexibility they desired.
The parties now have two young children. The youngest, Molly, is currently attending day care full-time, from approximately 9:00 a.m. until 5:30 p. m. Halle, the oldest, is enrolled in nursery school from approximately 9:00 a.m. until 12:00 noon when she is transported by the plaintiff to day care which Halle attends until 5:00 p. m. Since both children attend nursery school or day care for the entire workday, the plaintiff is available for full time employment with an accounting firm. I do not find, as the plaintiff claims, that she is unavailable for such employment because she must transport Halle from nursery school to day care. The plaintiff admitted at trial that she has made no efforts to CT Page 14084 investigate whether alternate travel arrangements could be made for Halle. In light of the parties' divorce, it is not unreasonable to expect the plaintiff to make such arrangements or change Halle's placement in order to make herself available for full-time employment with an accounting firm.
The testimony of Mark Harrison that the plaintiff has an earning capacity of $55,000 to $70,000 and the testimony of Curt Audibert that the plaintiff has an earning capacity of $50,000 to $80,000 were reasonable and persuasive. Based on that testimony, I find that the plaintiff has an earning capacity of $55,000 annually which results in an imputed net weekly income of $823. The evidence presented at trial showed that there are currently positions at private accounting firms available in the area to a person with the plaintiff's qualifications. In light of the breakup of her marriage and the limited net income that her business generates on an annual basis, it is reasonable and appropriate to expect the plaintiff to seek and obtain a more lucrative position with an accounting firm.
The plaintiff has requested that the court award her periodic alimony which the defendant fervidly opposes. The significant length of the marriage, seventeen years, weighs strongly in favor of alimony. However, the plaintiff's fault in causing the disintegration of the marriage and her ability to earn a substantial income as a certified public accountant argue against such an award. At the age of thirty-six, the plaintiff is still relatively young and in good health. During the marriage, she obtained her undergraduate degree in accounting and her certification as a CPA. Her economic future is bright and her earning potential is ample. Notwithstanding the fact that the plaintiff is the children's primary care giver, no reasonable impediment exists to her procuring full-time employment with an accounting firm. Moreover, the plaintiff bears responsibility for the breakdown of the marriage. She chose to cultivate a relationship with another man rather than sustain her marriage to the defendant. After carefully considering all the criteria governing the award of alimony pursuant to General Statutes § 46b-82, I have determined that the provision of long-term periodic alimony to the plaintiff is not appropriate.
The plaintiff is, however, in need of financial support from the defendant in the short term. She can not be expected to fulfill her earning potential by obtaining tomorrow a full-time position with an accounting firm. The plaintiff needs a reasonable period of time to procure such a position. Therefore, an award of alimony to the plaintiff in the amount of $400 weekly for a period of three months is appropriate to enable the plaintiff to obtain a full-time position with an accounting firm commensurate with her qualifications and experience. CT Page 14085
The plaintiff further maintains that the court should consider in its financial orders in this case the defendant's interests in three family trusts. The defendant asserts that the defendant's interests in these trusts are mere expectancies that should not be assessed by the court. The court agrees with the defendant.
The defendant's parents have established three trusts: (1) George L. Wilson Family Trust; (2) George L. Wilson Revocable Trust of 1997; and (3) Sarah J. Wilson Revocable Trust of 1997. George L. Wilson, the defendant's father, died in 1998. The principal of the George L. Wilson Family Trust consists of $100,000 proceeds from his father's life insurance. The trust was created primarily for the benefit of the defendant's mother and the rights of all subsequent beneficiaries are subordinate. The defendant's mother may withdraw up to $3,000 per year and she has the power to assign the principal of the trust to the settlor's issues in such proportions as she deems appropriate. The trustees may pay income and principal from the trust to the beneficiaries as they may determine. Upon the death of the defendant's mother, the trustees shall pay the remaining principal and any undistributed income to the defendant and his sister.
The George L. Wilson Revocable Trust of 1997 provides that the defendant's mother shall be entitled to the principal and income of the trust during her lifetime. Upon her death, the remaining principal and interest shall be paid to the defendant and his sister. The Sarah J. Wilson Revocable Trust of 1997 presently provides that upon the death of the defendant's mother, the property of the trust shall be given to her two children in equal shares. The trust may be amended or revoked by the defendant's mother at any time.
The defendant's interests in these trusts may not properly be considered in fashioning property orders pursuant to General Statutes § 46b-81. Property subject to distribution under § 46b-81 in a dissolution action includes only interests that are presently existing, as opposed to mere expectancies. Lopiano v. Lopiano, 247 Conn. 356, 366
(1998). See also Rubin v. Rubin, 204 Conn. 224 (1987). The marital estate divisible pursuant to § 46b-81 refers to interests already acquired, not to expected or unvested interests, or to interests that have not been quantified. Smith v. Smith, 249 Conn. 265, 274 (1999).
"The terms `estate' and `property,' as used in the statute, connote presently existing interests. `Property' entails interests that a person has already acquired in specific benefits." Rubin v. Rubin, supra,204 Conn. 231. "`Expectancy' is the bare hope of succession to the property of another, such as may be entertained by an heir apparent. Such CT Page 14086 a hope is inchoate. It has no attribute of property, and the interest to which it relates is at the time nonexistent and may never exist." Id. 229-30. "[U]nlike a property interest, an expectancy may never be realized. The term expectancy describes the interest of a person who merely foresees that he might receive a future beneficence. The defining characteristic of an expectancy is that its holder has no enforceable right to his beneficence." (Internal quotation marks omitted.) Simmonsv. Simmons 244 Conn. 158, 166 (1998).
The defendant has no enforceable right to the benefits of any of the three trusts established by his parents. The distributions from the trust depend of the discretionary decisions of the trustees or are contingent on the death of the defendant's mother. The Sarah J. Wilson Revocable Trust of 1997 is a revocable trust in which the defendant does not have a vested property interest, but rather a mere expectancy, until the death of his mother renders the trust irrevocable. Bartlett v. Bartlett,220 Conn. 372, 376-77 (1991).
The plaintiff asserts that, even though the defendant's interests in the three trust are not property, equitable principles compel the court to take into consideration the defendant's possible future inheritance of substantial property when fashioning its financial orders in this case. The fundamental problem with the plaintiff's request is that the court does not know at this time the precise value of the property, if any, that the defendant will realize in the future. It is inappropriate to base a present award of property or alimony upon an unknown and uncertain future interest.[2] Rubin v. Rubin, 204 Conn. 224, 237 (1987). A potential inheritance, however substantial, may play no role in the consideration of financial orders in a dissolution action. Krause v.Krause, 174 Conn. 361, 364-65 (1978).
In determining the orders issued herein, I have carefully considered all the relevant statutory criteria, including those contained in General Statutes § 46b-81 as they relate to the assignment of property, § 46b-82 as they relate to the award of alimony, and § 46b-84 and the child support guidelines as they relate to the award of child support. The court enters the following orders:
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. The custody and visitation agreement reached by the parties and approved by this court on June 12, 2001 is incorporated into this judgment. Both parties are ordered to successfully complete the parenting education program within sixty days of this dissolution judgment. CT Page 14087
3. The defendant shall pay periodic alimony to the plaintiff in the amount of $400 weekly. The payment of alimony by the defendant shall terminate upo:n the plaintiff obtaining full-time employment with an accounting firm or its equivalent, or January 11, 2002, whichever shall first occur.
4. Based on the plaintiff's present earning capacity of $55,000 annually and in accordance with the child support guidelines, the defendant is ordered to pay child support to the plaintiff in the amount of $297 weekly.[3] The plaintiff shall be responsible for the first one hundred dollars of any unreimbursed medical expenses for each minor child for each calendar year. In accordance with the child support guidelines, the plaintiff shall pay 50% of any unreimbursed medical expenses for each minor child that exceed one hundred dollars per calendar year and the defendant shall pay 50% of any such unreimbursed medical expenses. The defendant shall maintain medical insurance for the two minor children. Also in accordance with the child support guidelines, the plaintiff and the defendant shall each pay 50% of any qualified child care expenses.
5. The marital home at 25 Pepperwood Lane, Branford, Connecticut shall be immediately placed on the market and sold. The plaintiff shall have exclusive possession of the premises until it is sold. The plaintiff shall be solely responsible for payment of the mortgage and taxes on the property until it is sold. The plaintiff shall be responsible for the maintenance of the property while she resides there. All reasonable and necessary maintenance expenses which exceed $100 shall be shared equally by the parties. The parties shall mutually agree on a realtor who shall determine the selling price for the property. Neither party shall unreasonably withhold his or her consent to the particulars of the sale of the property. The plaintiff and the defendant shall each receive one-half of the net proceeds after sale. Net proceeds are defined as the funds remaining after payment of any mortgages, including any home equity loans, liens, encumbrances, taxes and the usual and customary costs associated with a sale. The court shall retain jurisdiction to enter further orders, if necessary, to effectuate the sale of the property.
6. The defendant shall retain ownership of the condominium at 182 Shagbark Drive, Derby, Connecticut.
7. The parties shall equally divide the balances in their joint bank accounts.
8. The retirement accounts of the parties consisting of the plaintiff's three IRA's and the defendant's two IRA's and a 401k plan shall be divided equally by the parties. To accomplish this end, the total retirement accounts shall be valued as of the date of this order and the CT Page 14088 appropriate amount shall be transferred from one party to the other in order to equalize their respective shares of the total amount.
9. The artwork jointly owned by the parties shall be equally divided.
10. The defendant shall retain ownership of the 1968 Porsche.
11. The plaintiff is awarded for tax purposes the child dependency exemption for Halle and the defendant is awarded for tax purposes the child dependency exemption for Molly.
12. The parties shall retain the personal property presently in their respective possession except, pursuant to the agreement of the parties, the defendant is awarded the personal property listed in paragraph 11A of his amended claims for relief dated August 27, 2001 and the family dog which shall be picked up by the defendant within three weeks from the date of this order.
13. The defendant shall cooperate with the plaintiff so that she may exercise, at her election, her rights under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), to the extent such rights are available to her, to maintain health insurance at her expense under the defendant's health insurance plan.
14. The plaintiff's maiden name of Jacquelyn Caulfield is hereby restored.
15. Each of the parties shall be solely responsible for payment of the liabilities listed on their respective financial affidavits except that the plaintiff shall be responsible for paying one-half of the joint Visa debt in the amount of $3,000 listed on the defendant's affidavit.
16. Each of the parties shall be responsible for the payment of their respective attorney's fees.
17. The defendant shall remain custodian of the children's custodial accounts.
18. The defendant shall maintain his current life insurance policy in the amount of $500,000 naming his two minor children as beneficiaries for so long as he continues to have an obligation to pay child support for them.
BY THE COURT
Judge Jon M. Alander CT Page 14089
[EDITORS' NOTE: THE WORKSHEET FOR THE CONNECTICUT CHILD SUPPORT AND ARREARAGE GUIDELINES IS ELECTRONICALLY NON-TRANSFERRABLE.]